J. Larry STINSON, Appellant,

v.

STATE BOARD OF ACCOUNTANCY, Appellee.

Court of Appeals of Kentucky.

Dec. 23, 1981.

W. David Denton and Thomas J. Keuler, Paducah, for appellant.

Steven L. Beshear, Atty. Gen., Martin Glazer and Michael R. Beiting, Asst. Attys. Gen., Frankfort, for appellee.

Before HAYES, C. J., and REYNOLDS and WILHOIT, JJ.

HAYES, Chief Judge:

J. Larry Stinson appeals from a judgment of the Franklin Circuit Court which affirmed the order of the State Board of Accountancy censuring Stinson for failing

to provide a former client of Reed & Co., with whom he is associated, with information necessary to allow the client to timely file income tax returns.

Stinson makes the following arguments on appeal: (1) the Board acted arbitrarily and unreasonably in censuring Stinson because it did not make sufficient findings of fact and the findings it did make were not supported by substantial evidence; (2) the presence of the Board's attorney and executive director during the Board's deliberations violated Stinson's due process rights; and (3) the Board violated the open meeting law when it conducted its final deliberations.

Stinson urges that the Board did not make sufficient findings of fact and that the findings made were unsupported. In the area of administrative law, the need for clear reasons for actions taken and substantial evidence to support those findings and conclusions is critical to insure uniformity of action by administrative agencies. *Pearl v. Marshall*, Ky., 491 S.W.2d 837 (1973). Board actions not supported by substantial evidence are arbitrary. *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, Ky., 379 S.W.2d 450 (1964).

The Board found that on April 10, 1980, Dr. and Mrs. Robert Jackson made a timely request for certain records needed to file their tax returns. They were clients of Robert Cornman who had left Reed & Co. some months earlier. The Board determined that Dr. Jackson was promised his records by April 11, but that on April 11, Mrs. Jackson was informed that under no circumstances would the records be gathered until after April 15. The Board in its findings also determined that there were several encounters, over the telephone and in person, between the Jacksons and various employees of Reed & Co. The Board concluded that Stinson was guilty of acts discreditable to the accounting profession under Rules 304 and 501 of the *Rules of Professional Conduct of the State Board of Accountancy of Kentucky*, because he failed to timely furnish a former client of Reed & Co. with information in his possession.

Stinson argues that the Board never determined whether the furnishing of the records on April 16 was an action taken within a reasonable time. Stinson's premise is that since Rule 304 requiring the furnishing of information upon request does not state a time limit for performance, then a determination of what is a reasonable time, is necessary. This might be the case in certain situations, but not here. In the present case, Stinson made a blanket policy of not filling record requests until after April 15. Although he insisted that the policy was formulated because of the heavy income tax workload in the firm, he admitted in response to questions by a Board member that time was not the controlling factor, but rather he was sticking to a management decision. That Stinson's refusal to give the records to the Jacksons was so prompted, is evidenced by the fact that it took no more than one hour to gather the information on April 16, while it had taken substantially more than that length of time for Stinson and various Reed & Co. employees to talk with the Jacksons and refuse them the requested information. Also, no one at Reed & Co. ever determined how long the information gathering could possibly take, because no one thoroughly examined the list of requested information. The Board correctly found that under no circumstances, no matter what the time considerations were, would Stinson have produced the information before April 16. Under these circumstances, there was no need to make further findings regarding timeliness.

The remaining prong of Stinson's first argument questions whether there was substantial evidence to support the Board's findings. We agree with the trial court and hold that there was. Stinson adopted a policy, on or about April 9, of not filling any information requests until after April 15. He subsequently received two requests, one of which was the Jacksons'. Without determining what the Jacksons were requesting or how long it would take to assemble, he first agreed to and then refused their re-

quest, spending more time arguing over his blanket policy than it would have taken him to grant the request. This was certainly substantive evidence that Stinson's refusal was unreasonable and his later production of the information was not timely under the circumstances. The Board's findings are supported by ample substantial evidence.

Stinson next maintains that his constitutional due process rights were violated by the presence of Martin Glazer, the opposing attorney, and James Ahler, the executive director of the Board, during the Board's final deliberations. Stinson and his counsel were not present. It is not clear from the record if they requested entry and were refused or if they raised any objection. Stinson's attorney stated in an affidavit that he did not learn of Glazer's and Ahler's presence during deliberations until sometime after the conclusion of the hearing. This issue was never presented to the Board.

Ahler's affidavit, filed with circuit court, stated that he did not participate in the discussion, but merely recorded motions and voting results. In his affidavit, Glazer swore that he was present in his capacity as the Board's lawyer, to advise the Board concerning its statutory authority in relation to the hearing. Glazer also stated that he did not participate in the Board's discussion and vote, but that he did take notes on various bits of evidence discussed so that he could draft an order in conformity with the Board's decision and vote.

The Board urges that Stinson waived any error concerning Glazer's and Ahler's presence during the deliberations because such was never made known to the Board. We would tend to agree, but for the fact that Stinson's counsel testified that he did not learn of the men's presence until sometime after the hearing. Also KRS 325.060 would seem to provide only for an appeal to circuit court, with no opportunity to present such an objection to the Board on a petition for reconsideration. In light of these considerations, we will examine Stinson's second argument.

■ Stinson's contention with respect to the presence of Glazer and Ahler during the Board's deliberations raises an issue involving Stinson's constitutional rights. However, even if such presence were error, the error is not necessarily prejudicial to Stinson, requiring reversal. Such was the holding in the criminal case of *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976). First, we do not believe that Ahler's presence was error. Ahler was the director of the Board and was acting as a recording secretary. Second, while we hesitate to call Glazer's presence during the deliberations reversible error, we do question the propriety of his presence. Since the Board is the fact finder, we believe it is incumbent upon the Board to set forth, at least in a preliminary fashion, its findings. Glazer stated that his presence was required, in part, to note certain bits of evidence discussed to draft the order. We believe the Board should make such notes, even though it may later submit same to its attorney for the drafting of an order. Therefore, while the Board's attorney may be available for answering a question of a statutory or procedural nature, we do not think that his presence during the actual deliberations is necessary and could, in some circumstances, certainly operate to the detriment of one brought before the Board.

The test applied in *Niemeyer* to determine if an error was prejudicial to a defendant, is whether upon consideration of the whole case there is a substantial possibility that the result would have been different. Here, the evidence clearly demonstrated that Stinson failed to provide the requested information until after April 15, because of an arbitrary, unreasonable act prompted by what Stinson termed was his "feeble attempt at a management decision" and not necessarily by his heavy workload. Under the evidence presented and applying the criminal law standard of *Niemeyer*, we do not believe that Stinson was prejudiced by Glazer's presence during the Board's deliberations.

■ Stinson's final complaint is that the Board violated the open meeting laws, KRS

61.805–KRS 61.845, by conducting its final deliberations in a closed session. We agree. However, since KRS 61.830 renders an action taken without substantial compliance with KRS 61.815, not void but voidable, we do not choose to void the action of the Board because Stinson raised no objection and because he demonstrated no prejudice as a result of the Board's action. We do feel compelled to discuss the salient issues involved here.

The Board argues that it is a quasi-judicial body excluded from the definition of "public agency" found in KRS 61.805. As aptly pointed out by Stinson, such an interpretation is illogical because any administrative body which occasionally holds hearings on certain matters, could exempt itself from the open meetings statutes. Also, if such were the case there would be no need for the exception to the open meeting requirement found in KRS 61.810(6), concerning disciplinary hearings, because any agency which held such hearings would be quasi-judicial and not within those agencies governed by the open meetings statutes.

The Board, as did the court below, relies on *Bell v. Board of Education of Harlan*, Ky.App., 557 S.W.2d 433 (1977) to support the proposition that the Board's deliberations after the hearing do not have to be held in an open meeting. While we certainly agree with this interpretation of KRS 61.810(6), we do not believe that this is the logical terminus of our discussion. The further issue raised by Stinson, albeit too late, was the Board's failure to comply with the prerequisites of KRS 61.815, in order to hold their disciplinary deliberations in a closed session. There was no evidence that the Board complied with KRS 61.815, in order to conduct its final deliberations in closed session. The Board contends that the entire hearing was a closed session. While this may have been the case here, this does not mean that the Board should not have complied with KRS 61.815, merely that it should have done so at an open meeting prior to the hearing. As we have previously stated, Stinson's acquiescence in the Board's procedural course constituted a waiver of any objection he might have had.

Therefore, we will not void the Board's action, but admonish the Board to adhere to the requisites of KRS 61.815 when, in the future, it intends to hold closed sessions.

The judgment is affirmed.

All concur.