Dr. Robin FANKHAUSER, in Her Official Capacity as Superintendent of the Fayette County Public Schools; and Board of Education of Fayette County, Kentucky, Appellants,

v.

Melinda COBB; Dr. Wilmer S. Cody, in His Official Capacity as the State School Officer; Rose Skepple, in Her Official Capacity as a Member of the Hearing Tribunal; Tim Hockensmith, in His Official Capacity as a Member of the Hearing Tribunal; Wanda Waldridge, in Her Official Capacity as a Member of the Hearing Tribunal; and Kentucky Education Association, Appellees,

and

Melinda Cobb, Appellant,

v.

Dr. Robin Fankhauser, in Her Official Capacity as Superintendent of the Fayette County Public Schools; Board of Education of Fayette County, Kentucky; Dr. Wilmer S. Cody, in His Official Capacity as the State School Officer; Rose Skepple, in Her Official Capacity as a Member of the Hearing Tribunal; Tim Hockensmith, in His Official Capacity as a Member of the Hearing Tribunal; Wanda Waldridge, in Her Official Capacity as a Member of the Hearing Tribunal; and Kentucky Education Association, Appellees.

No. 2002–SC–0368–DG,
2003–SC–0396–DG.

Supreme Court of Kentucky.

May 19, 2005.

Robert L. Chenoweth, John C. Fogle, III, Chenoweth Law Office, Frankfort, Counsel for Dr. Robin Fankhauser and the Board of Education of Fayette County, Kentucky.

J. Dale Golden, Golden & Walters, Lexington, Kathryn Holland Dunnigan, Frankfort, Counsel for Melinda Cobb.

Kevin M. Noland, Department of Education, Office of Legal Services, Frankfort, Counsel for Dr. Wilmer S. Cody, Rose Skepple, Tim Hockensmith and Wanda Waldridge.

Jeffrey S. Walther, Walther Roark Gay & Todd, PLC, Lexington, Counsel for Kentucky Education Association.

KELLER, Justice.

## I. INTRODUCTION

The superintendent of the Fayette County Public Schools instituted termination proceedings against Melinda Cobb ("Cobb") based on allegations of insubordination, conduct unbecoming a teacher, inefficiency, and incompetency. Cobb challenged her termination before a three-member administrative tribunal convened pursuant to KRS 161.790(4), which found that Cobb was guilty of only two of six charges alleged. Instead of terminating Cobb's employment, the tribunal reprimanded her and temporarily suspended her without pay. The Board of Education of Fayette County ("the Board") appeals, alleging that the tribunal improperly imposed sanctions less than termination when it had no power to do so or, in the alternative, that the tribunal's decision was not supported by substantial evidence, and

that the hearing officer's decisions to give legal instructions to the tribunal and to stay with the tribunal during its deliberations were reversible errors. On her cross-appeal, Cobb claims that the tribunal erred in failing to grant a directed verdict because there was no evidence to support her dismissal as a classroom teacher and in failing to give her a fair hearing as to one of the charges against her. Because we hold that the tribunal has the discretion to impose a lesser sanction, that it is not error for the hearing officer to give instructions or to stay with the tribunal during deliberations, that Cobb was not entitled to a directed verdict, and that she received a fair hearing, we affirm.

## II. BACKGROUND

The Fayette County Public Schools hired Melinda Cobb to serve as the principal for Leestown Middle School ("Leestown") for the 1997–98 school year. Cobb's contract was renewed for the 1998–99 school year. Cobb had previously worked for various public schools in the Commonwealth, but this was her first job within the Fayette County Public Schools. Cobb experienced a considerable amount of conflict with several members of the school's staff during her first year as principal at the school. She continued to have problems with certain members of her staff and with a small group of parents during her second year as principal.

On May 14, 1999, Dr. Peter Flynn, Dr. Robin Fankhauser's predecessor as superintendent, delivered to Cobb an extensive seventeen-page "termination packet," which detailed a variety of factual charges against Cobb and notified her that, absent an answer to the charges, (1) she would be demoted from her position as administrator in the Fayette County Public Schools for the 1999–2000 school year; (2) her salary would be reduced from that of ad-

ministrator to that of a teacher, a loss of approximately $22,000; (3) her "continuing teacher/principal contract" would be terminated; and (4) she was immediately suspended, without pay, pending the termination of her contract. The termination packet alleged that Cobb had violated KRS 161.790(1) by being guilty of insubordination, conduct unbecoming a teacher, inefficiency, and incompetence. The termination packet also described in detail the factual allegations underlying the charges, namely (1) complaints about Cobb's interaction with parents, her staff, and the Site Based Decision Making (SBDM) Council at the school; (2) her failure to properly perform the "Day 4" count of students, which is the official attendance count and which determines the amount of funding and staffing for the school for the coming year; (3) her improper conduct related to her employee evaluation; and (4) her carrying and possession of a gun on school property in violation of the Board's express policy. Cobb decided to answer the charges leveled against her. Pursuant to KRS 161.790(4), a three-member tribunal was convened to hear evidence of the charges and Cobb's response to the charges. The administrative hearing was held in August 1999 and lasted for twelve days.

The tribunal issued its written findings of fact, conclusions of law, and final order in September 1999. The tribunal found that Cobb had regularly carried a loaded gun on school property and that she had failed to report accurately the number of students attending Leestown in the "Day 4" Count. The tribunal also found that Cobb had made inappropriate comments to parents and staff and that she had had numerous problems and conflicts with parents, staff, and SBDM members, but that all the parties were at fault for those problems and conflicts. Finally, the tribunal found the Board had committed "major

procedural errors" in evaluating Cobb's performance.

As a result of these findings, the tribunal concluded that the Board had met its burden of showing a violation of KRS 161.790 only as to two of the charges, namely that Cobb was guilty of "inefficiency and incompetency" for failing to properly perform the "Day 4" count and "insubordination and conduct unbecoming a teacher" for bringing a gun onto school property. The tribunal then determined that the "appropriate sanction and punishment" for the two violations was a reprimand for the erroneous "Day 4" count and a suspension without pay until the end of the 2000–2001 school year, a total of two years, for the violation of the weapons policy. The tribunal also specifically concluded that Cobb's inappropriate comments were not sufficient to warrant sanctions.

The Board appealed the tribunal's decision to the Fayette Circuit Court, and Cobb cross-appealed. The Fayette Circuit Court reviewed the lengthy administrative record compiled before the tribunal and issued an opinion upholding the tribunal's ruling. The court found substantial evidence to support the tribunal's ruling and held that there was no prejudicial error in the procedures used by the hearing officer who presided at the hearing. The Court of Appeals, in turn, affirmed the circuit court, and we granted discretionary review.

### III.  ANALYSIS

#### A.  Whether The Tribunal Has The Authority To Alter The Sanction To Be Imposed.

■ The Board's first claim is that the tribunal in a teacher tenure case is limited only to fact-finding and has no power to modify the sanctions imposed by the school

superintendent. The Board notes that the tribunal is an administrative entity, and thus is a creature solely of statute, but that the enabling statute that provides for the existence and operations of the tribunal, KRS 161.790, does not grant authority to impose lower sanctions on teachers. Though in *Reis v. Campbell County Board of Education*,[1] we previously declared that the tribunal has ultimate control over the termination of a teacher's contract, we have not had the opportunity to address the specific issue of whether that authority also includes the power to impose alternative sanctions on a teacher. We now hold that the tribunal convened under KRS 161.790 also has the power to impose lesser sanctions in lieu of termination of a teacher's contract.

KRS 161.790, which was originally enacted in 1942, creates a system of tenure for teachers in Kentucky's public schools. Since at least the 1980s, the statute has provided that teachers may not be fired absent the existence of at least one of several defined causes:

> The contract of a teacher shall remain in force during good behavior and efficient and competent service by the teacher and shall not be terminated except for any of the following causes:
>
> (a) Insubordination, including but not limited to [ ] violation[ ] [of the school laws of the state or administrative regulations adopted by the Kentucky Board of Education, the Education Professional Standards Board, or] lawful rules and regulations established by the local board of education for the operation of schools . . . ;

> (b) Immoral character or conduct unbecoming a teacher;
>
> (c) Physical or mental disability;
>
> (d) Inefficiency, incompetency, or neglect of duty . . . . [2]

Though some of the descriptions of what constitutes insubordination have expanded, these four fundamental categories of "cause" have remained substantially the same.

The statute also provides an administrative procedure for the school superintendent to utilize to initiate termination of the teacher's contract for "cause" or to impose lesser sanctions on the teacher. Before 1990, the administrative procedures were controlled by the Board of Education directly, providing as follows:

> (3) No contract shall be terminated except upon recommendation of the superintendent and unless the teacher is furnished with a written statement, specifying in detail the charge or charges against said teacher, signed by the chairman and secretary of the board of education and naming a date and place at which the teacher may appear before the board of education and answer said charge or charges. Said date for the hearing shall not be less than twenty (20) nor more than thirty (30) days after the service of such charges upon the teacher. The teacher shall within ten (10) days after the receipt of the written statement of such charges notify the board of education of his intention to appear and answer such charges, and upon failure of the teacher to give such notice, the board of education may dismiss the teacher by a

---

1. 938 S.W.2d 880 (Ky.1996).

2. KRS 161.790(1) (bracketed text indicates changes in the statute since 1988: the first pair of brackets indicate a deletion of "1."; the second pair of brackets indicates the omission of an "s" that served to make "violation" plural; and the third pair of brackets indicates the cumulative added text resulting from various amendments up through 2000).

majority vote and such dismissal shall be final.

(4) Upon receipt of the teacher's notice of intention to appear and answer such charges, the board of education shall issue such subpoenas as shall be necessary for the determination of the issues involved. The issue shall be heard at the time and place set and the hearing shall be public or private at the discretion of the teacher. Both parties may be represented by counsel and may require the presence of witnesses upon subpoena. Each witness shall be required to take oath or affirmation before an officer of the board of education. The board of education shall provide for a stenographic report of the proceedings and furnish the teacher with a copy. Upon completion of both sides of the case the board of education may by a majority vote dismiss the teacher or may defer its action for not more than five (5) days.

(5) The board of education may, on recommendation of the superintendent, suspend a teacher pending final action to terminate his contract if, in its judgment, the character of the charges warrants such action. If after the hearing the decision of the board is against termination of the contract, the suspended teacher shall be paid his full salary for the period of such suspension.

(6) The teacher shall have a right to make an appeal both as to law and as to fact to the circuit court. If said appeal is not made within thirty (30) days after dismissal, then the decision of the board of education shall be final. Such appeal shall be an original action in said court and shall be commenced by the filing of a petition against such board of education, in which petition the facts shall be alleged upon which the teacher relies for a reversal or modification of the order of termination of contract. Upon service or waiver of summons in said appeal, such board of education shall forthwith transmit to the clerk of said court for filing a transcript of the original notice of charges and a transcript of all evidence adduced at the hearing before such board, whereupon the cause shall be at issue without further pleading and shall be advanced and heard without delay. The court shall examine the transcript and record of the hearing before the board of education and shall hold such additional hearings as it may deem advisable, at which it may consider other evidence in addition to such transcript and record. Upon final hearing, the court shall grant or deny the relief prayed for in the petition as may be proper under the provisions of KRS 161.720 to 161.810 and in accordance with the evidence adduced at the hearing. Either the teacher or the board of education may appeal from the action of the court to the Court of Appeals.

As an alternative to termination of a teacher's contract, the board of education may, by majority vote, impose other sanctions, including but not limited to, suspension without pay, transfer notwithstanding the provisions of KRS 160.380 and 161.760, public reprimand or private reprimand. The decision to impose sanctions is within the discretion of the board after a hearing on the charges. Upon hearing both sides of the case, the board may impose a sanction or may defer its action for not more than five (5) days. The decision of the board shall be final. Upon completion of a suspension period, the teacher may be reinstated.

The statute has been amended several

times since 1990 [3] as part of the extensive education reforms following our decision in *Rose v. Council for Better Education, Inc.*[4] KRS 161.790 now provides the following procedures: [5]

(3) No contract shall be terminated except upon notification of the board by the superintendent. Prior to notification of the board, the superintendent shall furnish the teacher with a written statement specifying in detail the charge against the teacher. The teacher may within ten (10) days after receiving the charge notify the chief state school officer and the superintendent of his intention to answer the charge, and upon failure of the teacher to give notice within ten (10) days, the dismissal shall be final.

(4) Upon receiving the teacher's notice of his intention to answer the charge, the chief state school officer shall appoint a three (3) member tribunal, consisting of one (1) teacher, one (1) administrator, and one (1) lay person, none of whom reside in the district, to conduct an administrative hearing in accordance with KRS Chapter 13B within the district. The chief state school officer shall name the chairman and set the date and time for the hearing. The hearing shall begin no later than forty-five (45) days after the teacher files the notice of intent to answer the charge.

(5) A hearing officer shall have final authority to rule on dispositive prehearing motions.

(6) The hearing may be public or private at the discretion of the teacher. At the hearing, a hearing officer appointed by the chief state school officer shall preside with authority to rule on procedural matters, but the tribunal shall be the ultimate trier of fact. The local board shall pay each member of the tribunal a per diem of one hundred dollars ($100) and travel expenses.

(7) Upon hearing both sides of the case, the tribunal may by a majority vote render its decision or may defer its action for not more than five (5) days. Provisions of KRS Chapter 13B notwithstanding, the tribunal decision shall be a final order and may be rendered on the record.

(8) The superintendent may suspend the teacher pending final action to terminate the contract, if, in his judgment, the character of the charge warrants the action. If after the hearing the decision of the tribunal is against termination of the contract, the suspended teacher shall be paid his full salary for any period of suspension.

(9) The teacher shall have the right to make an appeal to the Circuit Court having jurisdiction in the county where the school district is located in accordance with KRS Chapter 13B. The review of the final order shall be conduct-

---

**3.** 1990 Ky. Acts ch. 476, § 85; 1996 Ky. Acts ch. 318, § 53, ch. 362, § 6; 1998 Ky. Acts ch. 598, § 16; 2000 Ky. Acts ch. 200, § 1.

**4.** 790 S.W.2d 186 (Ky.1989).

**5.** The current version of the statute is different than the version in effect at the time of Cobb's hearing. The current subsection (5) was not enacted until 2000, 2000 Ky. Acts ch. 200, § 1, after Cobb's termination proceedings were initiated and heard. The other

subsections were retained and renumbered. Because our disposition of this case will likely affect how the present statute will be applied in the future, i.e., under the current version of the statute, because subsection (5) has no bearing on this case, and because the other subsections, though now differently numbered, are identical to the versions included in the statute in effect at the time of Cobb's hearing, we have included, and cite to, the current version of the statute.

ed by the Circuit Court as required by KRS 13B.150.

(10) As an alternative to termination of a teacher's contract, the superintendent upon notifying the board and providing written notification to the teacher of the charge may impose other sanctions, including, suspension without pay, public reprimand, or private reprimand. The procedures set out in subsection (3) of this section shall apply if the teacher is suspended without pay or publicly reprimanded. The teacher may appeal the action of the superintendent if these sanctions are imposed in the same manner as established in subsections (4) to (9) of this section. Upon completion of a suspension period, the teacher may be reinstated.

The 1990 and subsequent amendments to the statute effected a substantial change in the operation of the administrative procedures governing public school teacher tenure. Whereas the board of education used to be charged with addressing issues of teacher termination, it now has very little responsibility in the administrative process. The 1990 amendments limited the responsibilities of the local board of education to paying the tribunal members a per diem and travel expenses, paying for the recording of the hearing, and paying for a transcript of that recording.[6] Under the current version of the statute, the board of education is limited only to paying the per diem and traveling expenses.[7] The superintendent's power has been similarly curtailed since 1990 and has been limited to initiation of the termination of a

teacher's contract or other sanctions, and to the discretion to suspend a teacher pending the outcome of such termination proceedings.[8]

The primary thrust of the amendments, however, was to transfer responsibility for the administrative hearing as to charges of insubordination, incompetence, et cetera against a teacher to a neutral tribunal. The tribunal is made up of persons from outside of the school district and is *ad hoc* in nature in that a new tribunal is convened for each hearing.[9]

■ As to the tribunal's mandate, we first note that the amendments to KRS 161.790 fundamentally changed the way in which the administrative hearing worked by vesting ultimate power over the termination of a teacher's contract with the tribunal. We recognize that KRS 161.790 does not contain an express grant of this power, but we have no doubt that the statute completely transfers authority over teacher termination to the tribunal. For example, though the statute makes reference to the tribunal as the finder of fact,[10] which would seem to imply that the tribunal can only determine the factual disputes underlying the superintendent's choice to terminate, other portions of the statute assume that the tribunal has the power to control the termination decision itself: "If after the hearing *the decision of the tribunal is against termination of the contract,* the suspended teacher shall be paid his full salary for any period of suspension." [11] Though we did not make this specific point

6. *Reis,* 938 S.W.2d at 883 (citing the 1990 version of the statute, though the 1996 amendments were in effect at the time the decision was rendered, because the case had initially been brought under the 1990 version).

7. KRS 161.790(6).

8. KRS 161.790(3), (8), (10); *Reis,* 938 S.W.2d at 883.

9. KRS 161.790(4).

10. KRS 161.790(6).

11. KRS 161.790(8) (emphasis added).

in our earlier *Reis* case, it provides further support for our interpretation of the tribunal's power in that case, which we reaffirm here:

> The remaining powers of hearing the teacher's answer to the charge and terminating the teacher's contract by a majority vote, for so long within the sole province of the board of education, now reside in the three-member tribunal appointed by the chief state school officer.
>
> Basically, . . . [the] new composition of KRS 161.790 removes all control from the board of education when passing upon the recommendation of the superintendent to terminate a teacher.[12]

As such, it is clear that once a teacher challenges the superintendent's charges, the tribunal has exclusive control over whether to terminate a teacher's contract. The question, then, is whether the tribunal can impose lesser sanctions instead of terminating the teacher's contract. The Court of Appeals has previously addressed this specific issue.

In *Gallatin County Board of Education v. Mann,*[13] the Court of Appeals held that a tribunal convened under KRS 161.790 has inherent authority to modify the sanction to be imposed on a teacher. The Court of Appeals recognized that the 1990 amendment to the statute "deleted the specific authorization to modify the sanction"[14] that had previously resided in the board of education, but then noted that our pronouncement in *Reis* that control of termination of a contract resides in the tribunal, meant that "neither the superintendent nor the board of education has a right of control over the tribunal."[15] The Court of Appeals, in turn, interpreted the statute's transfer of control over termination of a teacher's contract to mean that the tribunal has "inherent authority to modify the employment sanction recommended by the superintendent . . . ."[16] While a claim that an agency has "inherent authority" may be problematic in light of the general principle of agency law that "administrative agencies are creatures of statute and must find within the statute warrant for the exercise of any authority which they claim,"[17] we agree with the Court of Appeals, whose underlying point is correct: KRS 161.790 cannot be read in a reasonable way so as to exclude from the tribunal the power to alter the sanctions recommended by the superintendent.

First, we note that in addition to allowing the superintendent to impose termination, the statute allows the superintendent to impose other sanctions, including suspension without pay, public reprimand, and private reprimand, as alternatives to termination.[18] The teacher has the same right to challenge these alternative sanctions, with the exception of a private reprimand, before the tribunal as he or she does to challenge termination.[19] Thus, just as the statute's grant of power to the tribunal to hear challenges to terminations contains the ultimate power to control termination of a teacher's contract, the grant of authority to hear challenges to lesser sanctions also confers on the tribunal exclusive control over imposition of those lesser sanctions. The power to address

---

12.  *Reis,* 938 S.W.2d at 883.

13.  971 S.W.2d 295 (Ky.App.1998).

14.  *Id.* at 299.

15.  *Id.*

16.  *Id.*

17.  *Department for Natural Resources v. Stearns Coal and Lumber Co.,* 563 S.W.2d 471, 473 (Ky.1978).

18.  KRS 161.790(10).

19.  *Id.*

termination and the power to address lesser sanctions are parallel and coextensive. The clear intent in including both of these powers is to have the tribunal decide all issues of teacher discipline, with the sole exception of private reprimands. For these parallel powers to have any meaning, the tribunal must be able to exercise them as alternatives to each other in the same proceeding. As such, the tribunal's power to modify the sanction imposed by the superintendent is not an "inherent authority" of the tribunal as an administrative entity, but rather it is necessarily included in the grant of the dual powers to hear appeals of termination of a teacher's contract and to hear appeals of lesser sanctions.

The mere fact that the statute allows the superintendent to choose between pursuing termination and lesser sanctions as alternatives does not remove from the tribunal the power to address lesser sanctions when the superintendent chooses to pursue termination. Otherwise, control over teacher discipline remains under the control of the superintendent, and thus the board. For example, under the Board's proposed interpretation of the statute, i.e., that the tribunal lacks the power to impose lesser sanctions when termination is challenged, if the superintendent proposes termination and the teacher successfully challenges the sanction, then the tribunal would then be limited only to deciding against termination. But because double jeopardy does not apply to civil administrative proceedings,[20] a category into which teacher disciplinary proceedings no doubt fall, the superintendent could then impose alternative lesser sanctions based on the same factual allegations pursuant to KRS 161.790(10), thus forcing the teacher to mount a second challenge to the *same* charges. Or, in an even more perverse twist, the superintendent could simply impose termination again in the hopes of finding favor before a friendlier tribunal. Though this latter scenario is unlikely given that the tribunal's decision that termination was not appropriate would likely have the effect of *res judicata*, the point is presented merely to show the unworkability of the Board's proposed interpretation. The more likely scenario, the pursuit of lesser sanctions in a second proceeding, however, also demonstrates that the Board's interpretation of the statute creates an utterly inefficient procedure for teacher discipline, and it frustrates the purpose of the statute, i.e., to shift determination of teacher discipline issues to a neutral administrative body.

Furthermore, as the Court of Appeals noted in *Mann*, this understanding "is consistent with administrative procedures in other contexts."[21] In *City of Louisville v. Milligan*,[22] we addressed whether KRS 90.190 gave the city civil service board authority to impose a lesser disciplinary sanction than that imposed by the appointing authority. KRS 90.190(2), which provides that "[t]he board shall investigate and determine the justification for all suspensions in excess of ten (10) days, or

---

**20.** *See Louisville Civil Service Bd. v. Blair*, 711 S.W.2d 181, 183 (Ky.1986) ("Double jeopardy is limited in its application to criminal prosecutions . . . ."); *Allen v. Kentucky Horse Racing Authority*, 136 S.W.3d 54, 63 (Ky.App. 2004) ("[T]he Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution 'protects only against the imposition of multiple *criminal* punishments for the same offense.' *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). . . . Therefore, as the administrative action in this case was civil in nature rather than criminal, double jeopardy principles do not apply.").

**21.** *Mann*, 971 S.W.2d at 299.

**22.** 798 S.W.2d 454 (Ky.1990).

dismissals," [23] contains a procedure similar to that in KRS 161.790, but, like KRS 161.790, it does not include express authorization for imposition of a lesser sanction. Nonetheless, we held:

> The Board is the final administrative reviewing authority of disciplinary actions. It is the duty of the Board to determine from the evidence whether there has been misconduct and also to ascertain whether the disciplinary action was justified under all the facts and circumstances. The power of the Board to modify discipline which is unjustified in the opinion of the Board is consistent with the legislative intent of the General Assembly as found by the Court of Appeals. K.R.S. 90.190(2) does not limit the authority of the Board to modify the penalty against a classified employee. . . .
>
> . . . The power to modify discipline is reasonably necessary and appropriate to effect the express powers of the civil service board. To hold otherwise would be to frustrate the purpose of the civil service system. [24]

KRS 161.790 is fundamentally similar to KRS 90.190—both statutes intend to create a tenure system for public employees by vesting an administrative entity with the power to address disciplinary matters. As such, we can only conclude that the reasoning in *Milligan* applies with equal force to KRS 161.790. The power to control teacher discipline that the tribunal enjoys under KRS 161.790 includes the power to modify the sanctions imposed by the superintendent.

Finally, we must note that the amendments to the statute, by combining the "good behavior" tenure provisions with a neutral arbiter of the dispute, is obviously intended to create an administrative agency, or civil service board, to address matters of teacher discipline. As we have previously noted, "[t]he true purpose of a civil service or merit system concerning public employees . . . [is] that civil service systems were established to control the unfettered discretion of elected and appointed officials in public employment." [25] The amendments also remove the potential conflict of interest that would no doubt arise from the fact that it is the board of education, through its agent, the superintendent, that seeks termination of the teacher's contract. [26] We must also note that the amendments to the statute are part of the extensive educational reforms that the General Assembly has enacted to bring Kentucky's public schools into conformity with their constitutional requirements of Section 183 of the Kentucky Constitution as required by our decision in *Rose v. Council for Better Education, Inc.* [27] Administrative entities are often an effective means of handling complex matters. By shifting the hearing to a neutral tribunal, the amendments aim to increase efficiency in the process by freeing the board of education, whose primary responsibility is governance of the entire local school system, from the burden of holding a complex and lengthy hearing relating only to individual matters, and by delegating responsibility for the hearing to an administrative entity whose sole purpose is

**23.** KRS 90.190(2).

**24.** *Milligan*, 798 S.W.2d at 456–57.

**25.** *City of Louisville v. Milligan*, 798 S.W.2d 454, 457 (Ky.1990).

**26.** See *Reis v. Campbell County Board of Education*, 938 S.W.2d at 883 ("The three-member tribunal created in KRS 161.790(4) is a separate and distinguishable entity from the Board. . . . [T]he tribunal is not an agent of the Board").

**27.** 790 S.W.2d 186 (Ky.1989).

to hear the case.[28] Though we are mindful of the fact that as an administrative entity, the tribunal is a "creature[ ] of statute and must find within the statute warrant for the exercise of any authority which [it] claim[s],"[29] this understanding of the principles underlying administrative entities colors our interpretation of the tribunal's enabling statute, for what better way is there to effect such principles than to remove completely the authority to control teacher discipline and to give that authority to the tribunal. This appears to have been the clear purpose of the statute.

We conclude that the current version of KRS 161.790 allows the superintendent to allege facts constituting charges of "cause" against teachers and to impose sanctions in conformity with those charges. But once the teacher chooses to challenge the charges and sanctions, the superintendent is limited to presenting evidence of the charges and recommending a sanction, much like a prosecutor in a criminal case, and the decision both as to the facts of the charges and the appropriate sanction is vested wholly in the tribunal. The tribunal has the discretion to accept or reject the sanction proposed by the superintendent and the discretion to impose an alternative or less severe sanction.

**B. Whether The Tribunal's Imposition Of Lesser Sanctions Was Justified.**

The Board also argues, on the assumption that we would uphold the rule in *Mann,* which we do, that the tribunal's decision to reduce Cobb's sanction from termination to a public reprimand and suspension without pay for two years was arbitrary and not justified. The Board claims that the two charges the tribunal found Cobb guilty of were alone sufficient to terminate her contract, and that the tribunal did not find facts sufficient to authorize a reduction in Cobb's sanction.

■ The standard of review of the tribunal's decision, when appealed by the board of education, is whether the decision was arbitrary.[30] Administrative action,

---

**28.** *Cf. Gray v. Powell,* 314 U.S. 402, 411–412, 62 S.Ct. 326, 333, 86 L.Ed. 301 (1941) ("Congress, which could have legislated specifically as to the individual exemptions from the code, found it more efficient to delegate that function to those whose experience in a particular field gave promise of a better informed, more equitable adjustment of the conflicting interests of price stabilization upon the one hand and producer consumption upon the other."); J.L. Hill, *The Five Faces of Freedom in American Political and Constitutional Thought,* 45 B.C. L. REV. 499, 523 (2004) ("The growth of the administrative state is typically viewed as a tradeoff—the citizenry forgoing indirect political control in return for technical expertise, efficiency, and coverage (necessary because Congress lacks the knowledge, resources, and time to meet the growing need for administrative management of the diverse areas of modern industrial life)."); Shi–Ling Hsu, *A Two–Dimensional Framework for Analyzing Property Rights Regimes,* 36 U.C. DAVIS L. REV. 813, 865 (2003) (citing STEPHEN G. BREYER ET AL., ADMINISTRATIVE LAW AND REGULATO-

RY POLICY 4–9 (4th ed. 1999)) ("Implicit in the most generous views of the administrative state is the assumption that centralized regulatory agencies are efficiency-enhancing institutions.").

**29.** *Department for Natural Resources v. Stearns Coal and Lumber Co.,* 563 S.W.2d 471, 473 (Ky.1978).

**30.** *Reis v. Campbell Co. Bd. of Education,* 938 S.W.2d 880, 887 (Ky.1996). The tribunal's enabling statute only provides that "[t]he teacher shall have the right to make an appeal to the circuit court ... in accordance with KRS Chapter 13B." KRS 161.790(9). KRS 13B.140 provides: "All final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, *as provided in the agency's enabling statutes,* within thirty days after the final order of the agency is mailed or delivered by personal service." (Emphasis added.) The tribunal's

such as that of the tribunal, is arbitrary if it is not supported by substantial evidence.[31] " 'Substantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." [32]

When the circuit court heard the initial appeal of this case, it attempted—to borrow the Board's terminology—to rehabilitate the tribunal's decision to impose lesser sanctions. The circuit court noted that the tribunal found that Cobb was guilty only of two of the six factual allegations, that fault for the numerous conflicts between Cobb and the parents and staff was shared, and that the Board had committed "major procedural errors" in evaluating Cobb's performance served, in essence, as mitigators justifying the lesser penalty. The Board argues that this contradicts the clear mandate of *Gallatin County Board of Education v. Mann* [33] that the tribunal find specific "substantial evidence" to support reduction of the sanction imposed, which the Board reads as requiring a finding of mitigation whenever a lesser sanction is imposed. This is a misunderstanding of *Mann* and administrative proceedings in general, and it contradicts our holding above that the tribunal controls the sanction to be imposed.

The Board is correct in pointing out that the Court of Appeals in *Mann* found that the tribunal's decision to impose a lesser sanction was not supported by substantial evidence, thus it was arbitrary. This does not mean, however, that the tribunal must find mitigating circumstances in order to impose a lesser sanction. To understand this seeming contradiction, we must examine the circumstances surrounding the *Mann* decision. The tribunal in *Mann* originally issued an order affirming the superintendent's decision to terminate the teacher's contract, but the teacher appealed to the circuit court, which remanded the decision to the tribunal because it failed to exercise the full scope of its authority, i.e., the power to impose lesser sanctions.[34] On remand, the tribunal adopted its prior findings of fact and conclusions of law,[35] including findings of fact sufficient to justify termination and a specific conclusion "as a matter of law that [the][s]uperintendent ... was justified in terminating ... [the] teacher['s] contract," [36] but only imposed a suspension on the teacher.

In reversing this second tribunal decision, the Court of Appeals emphasized that the tribunal had found facts sufficient to authorize termination and, more importantly, had legally concluded that termination was justified.[37] The Court of Appeals was correct, then, in pointing out that in order for the tribunal to reduce the sanction "once the tribunal [has] made a specific finding that [the][s]uperintendent ... was justified in terminating [the teacher's] contract, it must determine that the disciplinary action recommended by the superintendent is arbitrary, unfair, dis-

---

enabling statute seems only to allow for an appeal by the teacher. But as we held in *Reis,* the statute's failure to provide for an appeal by the affected agency does not abrogate the right to appeal an *arbitrary* decision. *Reis,* 938 S.W.2d at 887.

**31.** *American Beauty Homes Corp. v. Louisville and Jefferson Co. Planning and Zoning,* 379 S.W.2d 450, 456 (Ky.1964).

**32.** *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998).

**33.** 971 S.W.2d 295 (Ky.App.1998).

**34.** *Id.* at 297.

**35.** *Id.*

**36.** *Id.* at 300.

**37.** *Id.* at 300–01.

criminatory or disproportionate." [38] The discussion of mitigating factors following this language, however, is misleading.

The Board urges us to require that the tribunal's decision *not* to impose certain sanctions be supported by substantial evidence, but we cannot. If the tribunal has the authority to decide the sanction, as we have held above, then it does not have to justify a reduced sanction. Holding otherwise would allow the superintendent to bind the tribunal. For example, in a case where there is no evidence to support the superintendent's proposed termination, it will be difficult to show mitigating evidence because it is difficult, if not impossible, to prove a negative. In such a case, there is nothing to mitigate because there simply is not sufficient evidence to support the superintendent's charges. A finding that a lower sanction is appropriate is, in effect, a finding that there is insufficient evidence to support a higher sanction. This is different than *Mann* where the tribunal specifically found that the higher sanction was justified. In such a case, the tribunal binds itself through its legal conclusions, rather than being bound by the superintendent's proposed sanction, and imposition of a lower sanction can only be justified by mitigating evidence. As such, absent a finding that the superintendent's proposed sanction is justified, a finding of mitigating factors or that the proposed sanction is arbitrary, unfair, discriminatory, or disproportionate is unnecessary.

██ The Board still claims that this case meets the subtle distinction made in *Mann* because the tribunal found Cobb guilty of two of the six charges, each of which alone is sufficient to justify termination. This, however, confuses the findings of fact and conclusions of law. The mere fact that termination is an allowed sanction for a given act or series of acts does not mean that it is the necessary sanction.[39] Again, as discussed at length above, the superintendent's proposed sanction is not binding on the tribunal. As such, a finding of fact as to one or more charges sufficient to allow termination does not require that the tribunal choose termination.

The tribunal in this case specifically found that a reprimand and suspension without pay were the "appropriate sanction" for Cobb's two violations of KRS 161.790. The tribunal did not find that the superintendent's proposed sanction was justified, thus a finding of mitigation was not necessary to justify the imposition of the lower penalty, and we cannot say that the tribunal's decision was arbitrary and capricious or an abuse of discretion.

### C. The Hearing Officer's Use Of Instructions.

██ The Board also raises issue with the hearing officer's decision to provide the tribunal members with jury-style instructions as to procedures, required factual findings, and legal conclusions.[40] As

---

38. *Id.* at 300.

39. This is, to some extent, analogous to criminal sentencing. For example, a class D felony has a sentencing range of one to five years. If the jury finds a defendant guilty, it gets to impose a sentence within that range. If the prosecutor asks for the maximum sentence, but the jury sentences the defendant to the minimum, one year in our example, it does not have to justify the decision *not* to impose a higher sentence, and the prosecutor could

not appeal that sentence on the grounds that the lower sentence was not justified by sufficient evidence. The fact of the matter is that the entire range of penalty is allowed.

40. Cobb claims that this issue was not fully preserved because the Board only objected to the content of the instructions (by tendering proposed instructions), not the giving of instructions. We will address the issue, however, because, as the circuit court noted in its order upholding the tribunal's decision, the

discussed already, the statute gives the tribunal the authority and responsibility for finding facts and determining the appropriate sanction, if any, to impose. The statute places responsibility for procedural matters in the hands of a hearing officer. The hearing officer rules on dispositive prehearing motions.[41] The hearing officer also presides over the hearing and has "authority to rule on all procedural matters" during the hearing.[42]

Though KRS 161.790 does not expressly grant the hearing officer the authority to use instructions, it also does not prohibit the use of instructions. The statute's delegation of authority over procedural matters, however, disposes of this issue, especially in light of the directive in KRS 13B.080(1), which is applicable to the tribunal's hearing through KRS 161.790(4), that "a hearing officer shall preside over the conduct of an administrative hearing and shall regulate the course of the proceedings in a manner which will promote the orderly and prompt conduct of the hearing."[43] Control over procedure includes the discretion to lay out the law and the responsibilities of the tribunal in deciding the case. As such, we agree with the Court of Appeals that "[i]n light of the numerous charges and considerable quantity of testimony presented, the hearing officer exercised both diligence and common sense in preparing an outline of the issues." The giving of instructions to the tribunal was consistent with the discretion inherent in the limited authority granted to the hearing officer and was not error.

The Board also claims that the instructions used by the hearing officer were improper because they were prejudicial to the board and because the tribunal did not actually fill out the "verdict" portion of the instructions. The instructions the hearing officer used were simple and straightforward. Totaling five pages, they instructed the tribunal that its decision required a majority vote and had to be in writing, that the hearing officer would not participate in deliberations except to answer any legal questions posed by the tribunal members, and that the burden of proof was on the Board to prove its allegations by a preponderance of the evidence. The instructions also recounted, verbatim, the tenure and "cause" definition in KRS 161.790(1)(a), (b), and (d); stated that the tribunal could "find that ... any conduct by Cobb's may constitute one or more of the [cause] offenses"; and defined "teacher" under Kentucky law.

The instruction then posed a series of interrogatories to the tribunal. The first three interrogatories relate to the insubordination charge and ask whether Cobb was guilty of a given charge, whether the charge was supported by a written record in the termination packet, and, if so, what specific conduct supports a finding of guilty as to the charge. The next two interrogatories ask whether Cobb was guilty of conduct unbecoming a teacher and what conduct supports the finding of guilty as to the charge. The next two interrogatories ask whether Cobb was guilty of inefficiency, incompetency, or neglect of duty, whether these charges were supported by a written record, and, if so, what specific conduct supported the finding of guilty. The instructions then state that if the tribunal does not find Cobb guilty of any of the charges, then its delib-

Board "objected to the giving of instructions ... [and] submitted its proposed instructions without waiving [its] objection to the giving of instructions."

41. KRS 161.790(5).

42. KRS 161.790(6).

43. KRS 13B.080(1).

erations are concluded and it shall issue an order reversing the termination decision. The last two interrogatories ask the tribunal what punishment it imposes for any violations Cobb was guilty of and what evidence the tribunal relied on in reaching its decision.

■ Though the instructions were incorrect in that the tribunal's decision does not have to be in writing,[44] they contain an otherwise accurate reflection of the law and the charges alleged by the superintendent, and their content did not prejudice the Board. Nor did the tribunal's failure to fill out the instructions prejudice the Board because the tribunal rendered written findings of fact, conclusions of law, final order, and notice of right to appeal that were more than sufficient to satisfy its statutory obligations.

### D. The Hearing Officer's Decision To Remain With The Tribunal During Deliberations.

■ Finally, the Board raises issue with the hearing officer's decision to stay with the tribunal during its deliberations. The record reveals that the hearing officer stayed with the tribunal in order to answer any legal questions that the members may have had and to serve as a scribe in order to help the tribunal render a written decision. The Board argues that KRS 161.790 only allows the hearing officer to control procedural matters and that answering questions about the law and serving as a scribe do not fall within the ambit of that authority. The Board also argues more generally that ex parte communications with the tribunal are forbidden and prejudicial.

While the Board is correct in pointing out that the hearing officer's authority is limited to prehearing and procedural matters and that remaining with the tribunal during its deliberations is not technically a procedural matter, we think that it is a reasonable exercise of the hearing officer's power absent some showing of prejudice or a rule expressly prohibiting such conduct. Again, we note that KRS 13B.080(1) requires that "a hearing officer shall preside over the conduct of an administrative hearing and shall regulate the course of the proceedings in a manner which will promote the orderly and prompt conduct of the hearing." Much like the use of instructions approved above, the hearing officer's decision to stay with the tribunal during its deliberations is consistent with KRS 13B.100.

The question then becomes whether the practice is expressly forbidden or is prejudicial to a party. The Board cites to KRS 13B.100 as proof that the hearing officer is expressly prohibited from staying with the tribunal. KRS 13B.100(1) provides:

Unless required for the disposition of ex parte matters specifically authorized by statute, a hearing officer shall not communicate off the record with any party to the hearing or any other person who has a direct or indirect interest in the outcome of the hearing, concerning any substantive issue, while the proceeding is pending.

■ The Board's invocation of KRS 13B.100, however, is a red herring. The purpose of the statute is to prevent ex parte communications between interested parties and the hearing officer. The tribunal enabling statute requires that the tribunal be composed from a pool of neutral persons.[45] As such, even a literal reading of KRS 13B.100 would not bar ex parte communications between the hearing offi-

---

44. KRS 161.790(7) (allowing the tribunal's decision to be "rendered on the record").

45. KRS 161.790(4).

cer and the tribunal. Moreover, we note that the tribunal enabling statute is unusual in that it divides the administrative authority and responsibilities between the three-member tribunal and a hearing officer—a situation not contemplated by KRS 13B.100. In most administrative proceedings, however, the hearing officer rules on procedural and substantive matters. KRS 13B.100(1) assumes that this is the case. Rather than requiring a bar on ex parte communication, this simply means that it makes sense, for the purposes of KRS 13B.100(1), to treat the hearing officer and the tribunal as a single entity. Communication among the members of that entity is not prohibited by KRS 13B.100.

The Board also cites to *Stinson v. State Board of Accountancy* [46] to show that ex parte contact between the officer who presides over a hearing and the entity that actually decides the issues presented is inherently prejudicial. *Stinson* involved an administrative hearing before the State Board of Accountancy where the attorney for the board elected to remain with the board during its deliberations in order to take notes to facilitate drafting an order. The Court of Appeals stated:

> [W]hile we hesitate to call [the attorney's] presence during the deliberations reversible error, we do question the propriety of his presence .... [W]hile the Board's attorney may be available for answering a question of a statutory or procedural nature, we do not think that his presence during the actual deliberations is necessary and could, in some circumstances, certainly operate to the detriment of one brought before the Board.[47]

The Court of Appeals then noted, however, that the presence of an interested attorney is not reversible error if such presence would not have affected the outcome of the case.[48]

And though the Court of Appeal's statement in *Stinson* about the impropriety of having the board's attorney present during deliberations certainly makes sense, it is inapplicable to this case because the hearing officer is not an interested party. The attorney in *Stinson* was an interested party because he, in effect, prosecuted the case against the accountant. That would be analogous, in this case, to having the Board of Education's attorney present with the tribunal during its deliberations. But as the circuit court recognized, the hearing officer does not represent either party. The hearing officer functions only to serve and to assist the tribunal; this function can extend into the tribunal's deliberations. Unless it can be shown that the hearing officer is not neutral, and is somehow an interested party, his or her presence during the tribunal's deliberations is not prejudicial, and thus is not error.

### E. Failure By The Tribunal To Grant A Directed Verdict.

In her cross-appeal, Cobb argues that the tribunal erred by failing to grant a directed verdict. She notes that all of the evidence presented against her related to the time when she was the principal of Leestown, and thus an administrator. She argues that her status as an administrator meant that she was not a teacher. She also notes that charges under KRS 161.790(1)(a) and (d) require support in the form of "a written record of teacher performance," [49] and she claims that the only

---

**46.** 625 S.W.2d 589 (Ky.App.1981).

**47.** *Id.* at 591.

**48.** *Id.*

**49.** KRS 161.790(2).

written record in this case related to her performance as a principal.

■ First we note that "teacher," at least for the purposes of KRS 161.790, "mean[s] any person for whom certification is required as a basis of employment in the public schools of the state, with the exception of the superintendent."[50] Principals fall within this category because they are required to be certified by the Educational Professional Standards Board.[51] Normally, school administrators, such as principals, are entitled to different procedural safeguards over their tenure,[52] unless the administrator has less than three years of service as an administrator, in which case, the administrator may, in effect, be summarily demoted as long as the superintendent complies with the notice procedures in KRS 161.760.[53] The superintendent followed the necessary procedures in this case to demote Cobb from her position as principal of Leestown because she had less than three years of service.

■ Because such an administrator is also a teacher, however, at least for the purposes of disciplinary matters, he or she still enjoys the protection of KRS 161.790 with regard to termination and other sanctions. Despite Cobb's implication otherwise, this is actually a boon to those administrators who have failed to serve the full three-year probationary period. But this dual status also means that evidence of a person's conduct as an administrator

is relevant to his or her continued employment as a teacher. The Board detailed Cobb's alleged "cause" worthy conduct in the termination packet that was sent to her. And the Board was allowed to present evidence of this conduct to the tribunal, which, upon consideration of that evidence, imposed what it considered to be the appropriate penalty. The Court of Appeals was correct in noting that the tribunal "was entitled to review [Cobb's] conduct in that office [principal] as a standard for determining her fitness to continue as a classroom teacher." Thus the written record related to her performance as a principal was sufficient, and the tribunal properly considered the evidence and committed no error by refusing to grant a directed verdict.

### F. Whether Cobb Received A Fair Hearing Regarding The "Day 4" Count.

■ Cobb's other claim on her cross appeal is that she was denied a fair hearing because the Board engaged in misconduct with regard to the issue of the "Day 4" count. Specifically, she claims that she presented sufficient evidence to the circuit court, in the form of an article from the *Lexington Herald Leader* dated January 11, 2000, to show that the Board committed sufficient "fraud or misconduct" to allow a supplementary evidentiary hearing. The newspaper article indicates that the Board had found problems with the com-

---

50. KRS 161.720(1).

51. KRS 161.020(1) ("No person shall be eligible to hold the position of superintendent, *principal*, teacher, supervisor, director of pupil personnel, or other public school position for which certificates may be issued, or receive salary for services rendered in the position, unless he or she holds a certificate of legal qualifications for the position, issued by the Education Professional Standards Board." (emphasis added)); *see also Daugher-*

*ty v. Hunt*, 694 S.W.2d 719, 720 (Ky.App. 1985) (noting "that by definition an 'administrator' other than a superintendent is also a 'teacher' ").

52. *See* KRS 161.765(2) (providing that an administrator with over three years of experience is entitled to a hearing before the board of education).

53. KRS 161.765(1).

puter software it used to keep track of student attendance, that these problems were significant enough that the Board was buying new software at a cost of almost $600,000, and that it had known about these problems since at least 1998. Despite the claims, we conclude that Cobb received a fair hearing.

First, we note that Cobb's claim of "fraud or misconduct" by the Board is misplaced here. Review of a final order by an administrative entity, such as the tribunal, "shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter." [54] In this type of case, it is the tribunal, which is distinct from the Board,[55] with the help of the hearing officer, that is engaged in administering a KRS Chapter 13B hearing under KRS 161.790. As such, fraud or misconduct that would allow the circuit court to exceed the scope of the record in its review would have to be on the part of the tribunal or the hearing officer. Because Cobb has not alleged such fraud or misconduct, the circuit court was correct in confining its review to the record.

We also note, however, that Cobb was free to offer evidence that it was a deficiency in the computer system, as opposed to her own fault, that led to the incorrect attendance count. In fact, Cobb did present some proof that the procedures for counting students was flawed as evidenced by the fact that Superintendent Fankhauser testified about an ongoing investigation into a problem with the counting of the number of bus riders in the 1997–98 school year, which was one of the problems discussed in the newspaper article. The fact that the investigation into the source of the attendance problem was ongoing when Cobb's hearing took place and the fact that Cobb failed to elicit more testimony, even though it is clear from the record that she had some knowledge that there may have been other causes of the attendance count problem, militate against a finding of misconduct or fraud by the Board.

## IV. CONCLUSION

The 1990 and later amendments to KRS 161.790 have shifted responsibility for fact finding and decision making as to what sanction, if any, to impose on a teacher. The tribunal was not required to cite mitigating evidence to justify its decision to impose a sanction of less than termination. The hearing officer did not commit reversible error by giving jury-style instructions to the tribunal and by remaining with the tribunal during its deliberations. Furthermore, Cobb was not entitled to a directed verdict, nor was she entitled to an evidentiary hearing before the circuit court when she first appealed the tribunal's ruling. For these reasons, we affirm the Court of Appeals.

All concur.

---

54. KRS 13B.150(1).

55. *See Reis v. Campbell County Board of Education,* 938 S.W.2d at 883 ("The three-member tribunal created in KRS 161.790(4) is a separate and distinguishable entity from the Board. . . . [T]he tribunal is not an agent of the Board").