Kenneth JAMES, in his Official Capacity as Superintendent of the Fayette County Public Schools; and Board of Education of Fayette County, Kentucky, Appellants,

v.

Janice SEVRE–DUSZYNSKA; Gene Wilhoit, in his Official Capacity as Chief State School Officer; and Martha Boyd, Thomas Lynch, and Lilly Sullivan, in their Official Capacities as Members of the Hearing Tribunal, Appellees,

and

Janice Sevre–Duszynska, Cross–Appellant,

v.

Board of Education of Fayette County, Kentucky; and Kenneth James, in his Official Capacity as Superintendent of Fayette County Public Schools, Cross–Appellees.

Nos. 2003–CA–002166–MR, 2003–CA–002235–MR.

Court of Appeals of Kentucky.

Aug. 26, 2005.

---

6. *Goodyear* at 581.

Robert L. Chenoweth, John C. Fogle, III, Frankfort, KY, for Appellants/Cross-Appellees.

Mary W. Ruble, Lexington, KY, for Appellee/Cross-Appellant, Janice Sevre-Duszynska.

No Brief for Appellees, Gene Wilhoit, Martha Boyd, Thomas Lynch and Lilly Sullivan.

Before COMBS, Chief Judge; GUIDUGLI and McANULTY, Judges.

## OPINION

GUIDUGLI, Judge.

Kenneth James, in his official capacity as Superintendent of the Fayette County Public Schools and the Board of Education of Fayette County, Kentucky (hereinafter, collectively, "the Board") have appealed from the Fayette Circuit Court's Final Judgment entered September 13, 2003, upholding the administrative tribunal's decision to reinstate Janice Sevre-Duszynska to her teaching position and to impose no sanction upon her for insubordination. Sevre-Duszynska has perfected a cross-appeal on the limited issue of the proof necessary to support a charge of insubordination. We affirm on the direct appeal, but reverse and remand on the cross-appeal.

While the facts underlying this appeal are not disputed, a recitation of those facts is necessary for a full understanding of the case. Sevre-Duszynska began teaching English as a Second Language for Fayette County Public Schools at Henry Clay High School in 1990, and began working under a continuing contract at the beginning of the 1994–1995 school year. By all accounts, she has been an excellent and dedicated teacher. Sevre-Duszynska became involved with a religious-based political organization called School of the Americas Watch, which organized protests at Ft. Benning, Georgia. On November 18, 2001, Sevre-Duszynska participated in one of the protests by leading a prayer group at

Ft. Benning, and was arrested when she "crossed the line" onto federal property. As a first-time offender, she received a "ban and bar" letter, which she believed would be the only punishment imposed on her. She returned to her teaching position in Kentucky, and in the spring of 2002, learned that she was going to be prosecuted for trespass. Following her July 8 through July 12, 2002, trial, Sevre–Duszynska was convicted, and she received a ninety-day sentence and $500 fine. As before, she returned to Kentucky and her teaching position following the trial. She received a message on August 15 from a probation officer that she was to report to the federal women's prison camp in Lexington on September 10 to begin service of the ninety-day sentence. Sevre–Duszynska notified the school principal the next day.

On August 19, she received a letter from Interim Superintendent, Dr. L. Duane Tennant,[1] suspending her with pay for twenty workdays so that he could investigate the facts surrounding her federal conviction and prison sentence. She was escorted from the building. Sevre–Duszynska responded in an undated letter on or about August 24 indicating that she would need a leave of absence from September 10 through December 10 to serve her prison sentence. Dr. Tennant replied to her letter on September 5, 2002, denying her request for leave. Sevre–Duszynska reported for her prison sentence on September 10, and was released on December 6, 2002. The following day, she picked up a certified letter from Dr. Tennant dated December 4, 2002. In the letter, Dr. Tennant terminated her contract as a teacher with Fayette County Public Schools based upon charges of insubordi-

nation and conduct unbecoming a teacher, as well as upon her violation of the Professional Code of Ethics for Kentucky School Certified Personnel. As grounds for her termination, Dr. Tennant cited her absence from work without leave beginning on September 10, which he stated constituted a material breach of her contract. In addition to terminating her contract, Dr. Tennant also suspended her without pay pending any appeal she might pursue.

Sevre–Duszynska obtained an attorney and initiated an appeal of her termination by letter dated December 9, 2002. She also requested a hearing pursuant to KRS 161.790 and KRS Chapter 13B. The matter was then assigned to a hearing officer, and a hearing was scheduled for January 23 and 24, 2003. Prior to the hearing, Sevre–Duszynska moved to dismiss the charges against her, citing Dr. Tennant's failure to follow the terms of the statute when he did not forward her request for leave to the Board of Education, the lack of a written record of teacher performance to support the insubordination charge, as well as the lack of a specific ethics code violation. In the prehearing conference order, the hearing officer denied the motion to dismiss, determining, in part, that statutes, regulations, local board policies and teacher contracts can provide the teacher with the written notice of the performance expected as contemplated by the statute.

At the hearing, the three-member tribunal heard testimony from Dr. Tennant and Sevre–Duszynska, as well as from other teachers at Henry Clay High School, a former student, and a teacher from Washington who is also involved in the School of the Americas Watch organization. On

1. The current superintendent of Fayette County Public Schools is Kenneth James, who, in his official capacity, is properly listed as an appellant and a cross-appellee in the

caption of this opinion. This action was originally pursued against Dr. Tennant in his official capacity as interim superintendent of Fayette County Public Schools.

January 31, 2003, the tribunal issued its Final Order, rejecting Dr. Tennant's sanction. While it determined that Sevre–Duszynska did not violate the Code of Ethics or engage in conduct unbecoming a teacher, the tribunal agreed with the Board that she was technically insubordinate because she was absent without leave. However, the tribunal concluded:

> [B]ut she did not intend to defy a direct order of the state, the Schools, or Dr. Tennant. She reasonably expected not to be prosecuted for her participation in the special demonstration, and she did nothing during that demonstration to change what she expected would happen. Although the Tribunal cannot know what the Fayette County School Board would have done about Ms. Sevre–Duszynska's leave request had the Board addressed it, the fact that Ms. Sevre–Duszynska did not have leave during her incarceration was, in fact, a result of the Superintendent failing to put the matter before the Board.

The tribunal then determined, by a majority, that Sevre–Duszynska should be reinstated with full back pay to the date of her termination. In looking at the context of the charges as to the appropriate penalty, the tribunal stated:

> 10. Whenever a teacher cannot teach and has not been granted leave from teaching duties, there are competing considerations for a school system. School systems should consider the circumstances that render a teacher unable to teach. Schools should also consider the expected length of the absence and the inconvenience to the school district. And schools should consider the teacher's performance record within the school system.[ ] Although previous bad conduct by the teacher should be dealt with on its own merits, if the teacher is effective, the Schools should consider whether retaining the teacher will benefit the students. The Schools improperly failed to consider the circumstances of Ms. Sevre–Duszynska's absence from teaching. And the Schools argued that Ms. Sevre–Duszynska's past teaching record was irrelevant. To the contrary, all the Tribunal members believe a teacher's teaching record should be one factor considered in deciding the appropriate sanction for any violation.

> 11. The majority of the Tribunal believes that the Superintendent acted improperly in thwarting Ms. Sevre–Duszynska's attempt to obtain leave from the Board, that he ignored her record as a valuable member of the Henry Clay faculty, and that he did not treat her as a part of an education family. Instead, the Superintendent treated her in a manner that impugned her character and caused her to suffer unnecessary embarrassment and expense. The majority believes the Schools should have learned more about the circumstances of her incarceration, and that it should have responded more compassionately to one of its own who had the courage to face prison for her convictions. The majority of the Tribunal believes Ms. Sevre–Duszynska should be reinstated with back pay to rectify the needless harm the Schools inflicted on her.

The Final Order read: "Based upon the foregoing findings of fact and conclusions of law, the Tribunal ORDERS that the Fayette County Schools reinstate Ms. Sevre–Duszynska with back pay to the date of her termination."

The Board filed a Complaint in Fayette Circuit Court from the tribunal's Final Order, solely on the insubordination charge. In the complaint, the Board alleged that the tribunal's conclusions of law were inconsistent with its findings of fact, making its reinstatement of Sevre–Dusz-

ynska arbitrary and capricious under § 2 of the Kentucky Constitution, that the decision to impose no sanction was an abuse of discretion and constituted arbitrary action, that the tribunal had no authority to excuse her breach of contract, that the tribunal exceeded its statutory authority to excuse her act of abandonment or resignation of employment, that Dr. Tennant's decision to terminate her was supported by substantial evidence, and that the tribunal could not substitute its judgment for that of Dr. Tennant. The complaint also named Gene Wilhoit, as the Chief State School Officer, and the three tribunal members as defendants. These defendants deferred to the real parties in interest for the active litigation of the appeal. Sevre–Duszynska filed an answer to the complaint, and also filed a counter-claim, alleging that her due process rights were violated when her teaching contract was effectively terminated on September 17, 2002, without notice, entitling her to additional back pay during her incarceration, and that there was no written record of teacher performance documenting and supporting the insubordination charge.

Following briefing on the issues from the claim and counter-claim as well as oral argument, the circuit court entered an Opinion and Order on August 28, 2003, solely on the Board's appeal. After determining that the tribunal's findings and conclusions to impose no sanction were supported by substantial evidence, the cir-

cuit court affirmed the tribunal's Final Order. The circuit court then entered a Final Opinion and Order/Judgment on September 15, 2003, on the remaining issues, incorporating the earlier Opinion and Order. The circuit court declined to rule on Sevre–Duszynska's argument that the tribunal was erroneously instructed on the proof necessary to support an insubordination charge, determining that the issue was moot in light of its earlier ruling. The circuit court then denied Sevre–Duszynska's claim for back pay while she was incarcerated.[2] This appeal and cross-appeal followed.

On appeal, the Board argues that the circuit court erred in upholding the tribunal's decision to excuse Sevre–Duszynska's breach of contract for her failure to perform under her teaching contract, and for failing to conclude that her absence from teaching without leave constituted an act of abandonment or resignation. In her cross-appeal, Sevre–Duszynska asserts that the tribunal was erroneously instructed on the proof necessary to support an insubordination charge.

◼ In *Fankhauser v. Cobb*,[3] the Supreme Court of Kentucky recently enunciated the standard of review applicable in an appeal from a tribunal's decision:

The standard of review of the tribunal's decision when appealed by the board of education, is whether the decision was arbitrary.[4] Administrative action, such

2. Obviously, the circuit court upheld Sevre–Duszynska's award of back pay from the date of her termination. Sevre–Duszynska did not appeal the circuit court's decision not to award her back pay while she was incarcerated.

3. *Fankhauser v. Cobb*, 163 S.W.3d 389, 400 (Ky.2005).

4. *Reis v. Campbell Co. Bd. of Education*, 938 S.W.2d 880, 887 (Ky.1996). The tribunal's

enabling statute only provides that "[t]he teacher shall have the right to make an appeal to the circuit court ... in accordance with KRS Chapter 13B." KRS 161.790(9). KRS 13B.140 provides: "All final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, *as provided in the agency's enabling statutes*, within thirty days after the final order of the agency is mailed or delivered by personal

as that of the tribunal, is arbitrary if it is not supported by substantial evidence.[5] " 'Substantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." [6]

During the oral argument in this matter, the Board presented the unique argument that KRS 161.790 does not apply to this case, as the facts of this case actually present a common law breach of contract claim not arising under the statute. We disagree with this assertion, and hold, as Sevre–Duszynska argued, that KRS 161.790 does indeed apply and is the sole avenue available to the Board to terminate a teacher under a continuing contract. We also agree with Sevre–Duszynska's statement at oral argument that the causes for termination listed in KRS 161.790 are in effect a codification of various breaches of contract. In its brief, the Board posited that the circuit court was incorrect when it determined that Sevre–Duszynska's failure to teach without having obtained a leave of absence did not constitute an abandonment or resignation of her employment, citing common law contract cases to support its argument. However, the Board itself chose to invoke KRS 161.790 when it charged Sevre–Duszynska with insubordination and conduct unbecoming a teacher. Furthermore, pursuant to her continuing contract, any resignation by a teacher must be in writing. The record is clear that Sevre–Duszynska never submitted a written resignation or ever intended to resign her position. We perceive no error.

Because we have determined that our ruling on the cross-appeal is determinative of the case, we shall now move on to Sevre–Duszynska's cross-appeal regarding what constitutes a "written record of teacher performance" sufficient to support a charge of insubordination. We note that the circuit court declined to rule on this issue, instead deeming the issue moot in light of its decision on the Board's appeal. We disagree that just because Sevre–Duszynska will not be penalized through a suspension or termination of her contract, that the issue is moot. She still has a right to argue that she should not have been subject to the charge at all because of a lack of necessary support for it, as she claims is required by the statute. Furthermore, if this Court were to ultimately decide the issue in her favor, the charge of insubordination would necessarily be removed from her record. Although we would have preferred that the circuit court review this issue at that level, because this is an issue of law and the circuit court in this instance has the same role as a reviewing court as this court does, we shall review this issue of first impression.

The appropriate instruction regarding the proof necessary to establish an insubordination charge was the subject of much discussion before the hearing officer both prior to and during the tribunal hearing. KRS 161.790 details the procedure for the termination of a teacher's contract. KRS 161.790(1) provides that a contract may only be terminated for insubordination, immoral character or conduct unbe-

service." (Emphasis added.) The tribunal's enabling statute seems only to allow for an appeal by the teacher. But as we held in *Reis*, the statute's failure to provide for an appeal by the affected agency does not abrogate the right to appeal an *arbitrary* decision. *Reis*, 938 S.W.2d at 887. (Footnote 30 in original.)

5. *American Beauty Homes Corp. v. Louisville and Jefferson Co. Planning and Zoning*, 379 S.W.2d 450, 456 (Ky.1964). (Footnote 31 in original.)

6. *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998). (Footnote 32 in original.)

coming a teacher, physical or mental disability, or inefficiency, incompetency, or neglect of duty. KRS 161.790(1)(a) defines insubordination as "including but not limited to violation of the school laws of the state or administrative regulations adopted by the Kentucky Board of Education, the Education Professional Standards Board, or lawful rules and regulations established by the local board of education for the operation of schools...." KRS 161.790(2) provides, in pertinent part, that a charge of insubordination under KRS 161.790(1)(a) "shall be supported by a written record of teacher performance by the superintendent, principal, or other supervisory personnel of the district." Sevre–Duszynska maintained below and to both the circuit court and this Court that because the insubordination charge was not supported by a written record of teacher performance by an appropriate person, the tribunal was improperly instructed on the proof necessary to establish the charge of insubordination and the charge should be dismissed. Both the Board and the hearing officer agreed that Sevre–Duszynska's proposed reading of the statute was too restrictive. Rather, the hearing officer ruled, in his prehearing conference order, and again during the hearing, that "statutes, regulations, local Board policies, or contracts with the teacher can provide that teacher with the written notice of performance expected of the teacher that the statute contemplates." We agree with Sevre–Duszynska's interpretation.

In *Manning v. Kentucky Board of Dentistry*,[7] this Court made it clear that "[t]he Court's function in the interpretation of statutes is to construe the language so as

to give effect to the intent of the legislature.... Where words in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as it is written." But we are also mindful of the Supreme Court of Kentucky's statement in *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.*[8] that "[a] statute should not be interpreted so as to bring about an absurd or unreasonable result. The policy and purpose of the statute must be considered in determining the meaning of the words used." In the present case, the statute is clear and unambiguous. The question, then, is whether a literal application of the statute would lead to an absurd result.

In her brief, Sevre–Duszynska posited that a "written record" would "be created by an administrator in response to specific instances of an individual teacher's performance. Such a record must necessarily be unique to the teacher who is charged and must logically document prior instances of insubordination or other acts that led to and support the charge." She argues that the plain language of the statute requires this, and that the "written record" goes beyond employment contracts, statutes, regulations and board policies because the requirement is dispensed with if a recommendation that a charge should be brought is made under KRS 158.6455.[9]

■ On the other hand, the Board argues that interpreting the statute as Sevre–Duszynska suggests would lead to an absurd result. In particular, the Board relies upon two Supreme Court decisions,[10] rendered the same day, which addressed

---

7.  657 S.W.2d 584, 587 (Ky.App.1983).

8.  983 S.W.2d 493, 500 (Ky.1998).

9.  KRS 158.6455 addresses school accountability.

10.  *Board of Education of Hopkins County v. Wood,* 717 S.W.2d 837 (Ky.1986), and *Board of Education of Laurel County v. McCollum,* 721 S.W.2d 703 (Ky.1986).

the former requirement that a charge of conduct unbecoming a teacher be supported by a written record of teacher performance. In *Wood,* two brothers, who were tenured teachers, were suspended and then terminated from their positions for acts committed during off-duty hours, during the summer, and in their own apartment. The charges of immoral character and conduct unbecoming a teacher stemmed from testimony that they smoked marijuana with two 15–year old girls. In *McCollum,* the teacher took sick leave from his school job to drive a coal truck. Based upon these decisions, the General Assembly removed the requirement of a written record of teacher performance from charges of conduct unbecoming a teacher. The Supreme Court stated in *Wood* that:

> Conduct unbecoming a teacher or immoral conduct, unless limited to behavior occurring on the school premises during school hours, could not possibly be documented by a record of school supervisory personnel in a manner that is probative or appropriate as contemplated by the statute. Such records relate to in-school professional performance, not off-school activities. Therefore to give the statute an absolutely literal interpretation leads to a patently absurd result. We must construe statutes of this nature in accordance with their purpose which means making an exception to the literal language in the present statute to avoid an absurd and unworkable result.[ 11]

Despite the decisions in *Wood* and *McCollum* and the subsequent amendment to the statute, the General Assembly did not alter the requirement that a charge of insubordination be supported by a written record of teacher performance. We cannot agree with the Board's assertion that

requiring such written notice would lead to any absurd result or allow the teacher one free bite of the apple. We first note that the offense for which Sevre–Duszynska was charged, being absent from her teaching position without leave, could easily be documented by school administrators. Furthermore, Sevre–Duszynska effectively countered each of the Board's arguments addressing the alleged absurdities in her reply brief. We also agree that a superintendent is not required to bring a charge of insubordination, especially if there is no written record to support the charge, as there are other options available to terminate a teacher's contract. Two of those charges, immoral character or conduct unbecoming a teacher and the presence of a physical or mental disability, do not require a written record of teacher performance. In the present case, Sevre–Duszynska was, of course, charged with conduct unbecoming a teacher, a charge that was reversed by the tribunal and not appealed to either the circuit court or this Court. As Sevre–Duszynska argued below, there was no reason that Dr. Tennant could not have notified her that her continued absence without leave could lead to her termination. Dr. Tennant could have notified her of this after she missed her first day of school without leave when she began her prison sentence, or during their meeting while she was incarcerated, at which point she indicated that she was willing and wanted to return to work upon her release. Such a notification would clearly have met the "written notice of teacher performance" requirement, because she would have been informed that her continued absence without leave could lead to her termination.

In conclusion, we hold that a charge of insubordination must be supported by a

11. *Wood,* 717 S.W.2d at 839.

"written record of teacher performance", which cannot be based solely on statutes, regulations, local Board policies, or teacher contracts, but must be specific to the individual teacher and the circumstances leading up to the charge. Because the tribunal was improperly instructed and the record does not reflect that the charge was supported by the required written record of teacher performance, the insubordination charge against Sevre–Duszynska must be dismissed.

█ Finally, in light of the holding above, we shall briefly address the Board's argument that the circuit court erred in upholding the tribunal's decision to impose no sanction on Sevre–Duszynska for insubordination. At the oral argument in this matter, the Board argued that the Supreme Court's recent opinion in *Cobb* is not dispositive here for two reasons: 1) *Cobb* deals with quality of performance, while this case relates to a failure of performance, or breach, and 2) *Cobb* only allows the tribunal to impose a lesser sanction, but does not hold that the tribunal has the discretion to impose no sanction at all. We disagree with both of these assertions. As we have stated hereinabove, this case does not present a common law contract claim, but arises, as it must, under KRS 161.790. The Board chose to base its charge of insubordination on Sevre–Duszynska's failure to comply with the terms of her contract, which required her to report to work. So we must review the tribunal's decision in light of the statutory and case law regarding insubordination and the termination of a teacher's contract.

█ Regarding the Board's second assertion that *Cobb* is not dispositive, as it only allows a tribunal to impose a lesser sanction as opposed to no sanction, we also disagree. While it is accurate that the Supreme Court upheld the tribunal's decision to reject the superintendent's recommendation to terminate Cobb, and impose the lesser sanction of a reprimand and a suspension without pay, the holding is certainly not limited to such situations. To permit the tribunal to impose no sanction at all is a natural extension of *Cobb's* holding. As the Supreme Court clearly held, the tribunal has the ultimate authority as the fact finder to determine whether to accept, reject, or modify the penalty recommended by the superintendent:

> [T]he current version of KRS 161.790 allows the superintendent to allege facts constituting charges of "cause" against teachers and to impose sanctions in conformity with those charges. But once the teacher chooses to challenge the charges and sanctions, the superintendent is limited to presenting evidence of the charges and recommending a sanction, much like a prosecutor in a criminal case, and the decision both as to the facts of the charges and the appropriate sanction is vested wholly in the tribunal. The tribunal has the discretion to accept or reject the sanction proposed by the superintendent and the discretion to impose an alternative or less severe sanction.[12]

In the present matter, the tribunal rejected Dr. Tennant's termination of Sevre–Duszynska and provided a basis for this decision using substantial evidence of record. The tribunal indicated in its Final Order that although Sevre–Duszynska was technically insubordinate, she did not intend to defy a direct order and Dr. Tennant had failed to pass along her leave request to the Board of Education. The tribunal then properly looked to the circumstances surrounding her absence from school as well as Sevre–Duszynska's past

---

12. *Cobb,* 163 S.W.3d at 400.

teaching record in determining an appropriate sanction. Because the tribunal considered all of the relevant circumstances contained within the record, its decision to reject Dr. Tennant's suggested penalty and reinstate Sevre–Duszynska with full back pay is supported by substantial evidence and, accordingly, is not arbitrary. Therefore, the circuit court properly affirmed the tribunal's decision in this respect.

For the foregoing reasons, the Fayette Circuit Court's judgment is affirmed on the Board's direct appeal, reversed on Sevre–Duszynska's cross-appeal, and remanded for a dismissal of the insubordination charge.

ALL CONCUR.