# Gover v. Stovall et al.

(Decided January 30, 1931.)

WOODS, STEWART, NICKELL & SMOOT for appellant.

R. C. LITTLETON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, L. E. Gover, was employed by the Grayson graded common school board of education, of which appellees are members, as a teacher and as a football coach in the Prichard High School in Grayson, Ky., operated by the board. The employment was for the scholastic year of 1928-29, and, after he had served about one month under his employment, written charges were preferred against him and a trial of them was had before the board, resulting in his discharge. After the termination of the school year he filed this action against defendants in the Carter circuit court to recover judgment against them for $1,025.40, which was the difference between what he had earned and was able to earn during the time of the contract and what defendants agreed to pay him, which was $1,600, he having earned, according to his petition, $574.60, which included his compensation up to the time he was discharged. The petition averred in general language that defendants discharged him over his protest, and "without sufficient cause and without any sufficient ground therefor." A demurrer filed to it by defendants was sustained, and plaintiff amended, and filed as an exhibit with his amendment what he said was an accurate copy of the testimony heard at his trial before the board, which was taken and transcribed by a stenographer agreed upon by the parties. In that pleading he averred that the only charge in the notice and to which

any of the testimony was directed was that of "misconduct," and that the testimony was insufficient to establish it, and that his discharge was illegal and not for any of the grounds enumerated in the statute, which plaintiff alleged was section 4472 of the 1930 edition of Carroll's Statutes, and by reason of which it was unauthorized and wrongful, and that he was entitled to recover judgment for the amount prayed for in his petition. The demurrer was renewed to that amendment, and to the petition as amended, and the court sustained it and dismissed the action, upon plaintiff's refusal to further amend, and complaining of that judgment, he prosecutes this appeal.

The court filed a written opinion and based his judgment therein upon the ground that the action was a collateral attack of the board's dismissal order, which the court treated as a judgment of a duly created court, and, upon the theory that the board had jurisdiction of the subject-matter and of plaintiff's person, its order could not be attacked collaterally. But it is clear to our minds that the court was in error in so concluding. However, since for other reasons we have concluded the judgment was proper and the demurrer was properly sustained to the petition, we will consume neither time nor space in demonstrating the inaccuracy of the court's reason.

Among other things, section 4396-2 of our present Statutes, which is a part of chapter 58 of the Sessions Acts of 1924, prescribes that the superintendent of public instruction shall prepare for approval and adoption by the state board of education a blank contract for the employment of teachers. That section has been construed by both state and local educational authorities as requiring contracts for the employment of teachers to be in writing, and forms of such contracts are prepared in writing and furnished to the various school boards to be filled and duly executed in the employment of teachers. It is our conclusion that the section was properly so interpreted as requiring such contracts to be in writing, but, if there were room for doubt upon the subject, such contemporaneous construction would resolve that doubt in favor thereof, and the case will be considered upon the theory that the law requires such employments to be in writing.

The petition nowhere averred that plaintiff's employment was in writing. He only alleged that "he

was employed by the defendant, Grayson Graded Common School Board of Education, as teacher and coach at the Prichard High School in Grayson, Kentucky, for a term of one year beginning at the beginning of the school term in September, 1928, and ending in June, 1929." In the cases of Mingo v. Trustees, Colored School District A of Garrard County, 113 Ky. 475, 68 S. W. 483, 24 Ky. Law Rep. 288; Lawless, County Superintendent, v. Scholl, 186 Ky. 566, 217 S. W. 681, and others referred to in those opinions, it was held by this court that, when a contract of employment of a teacher in the public schools is required by the statute to be in writing, such requirement is mandatory, and the contract is not enforceable unless it is in writing and substantially conforms to the requirements of the statute. That being true, was it incumbent upon plaintiff to allege in his pleadings in this case that the employment was under a written contract; or will it be presumed that the board complied with the law requiring the contract to be in writing?

Section 470 of our Statutes does not require the contracts therein specified to be in writing, but only withholds a right of action upon them if the contract is not in writing and executed as prescribed by the statute. Notwithstanding that distinction between the contracts mentioned in section 470 and section 4396-2, supra, which we interpret as requiring contracts of teachers to be in writing, this court, though in the minority as to such rule of practice, has consistently held that a pleading based upon a contract required to be in writing under the Statute of Frauds (section 470, supra) must aver that the contract was in writing and duly executed in the manner required by that statute, and that, unless the pleading so averred, it would be demurrable, provided it showed that the contract was one within the statute. No such latter showing would be required under that holding in a suit on a contract coming within a class which the statute requires all of them to be in writing.

It is our conclusion, therefore, that it was incumbent upon plaintiff to aver in his petition, or some amendment thereto, that the contract he relies on and for the violation of which he seeks relief was executed in the manner mandatorily required by the statute, and, having failed to do so, the court properly sustained a

demurrer to his pleading and dismissed his action upon his failure to amend.

But, we also conclude that upon another ground the court's ruling was proper, even if it had been alleged in plaintiff's pleading that his contract was in writing. He averred, as we have hereinbefore stated, that the applicable statute to his case is section 4472 supra, of our present Statutes, and we think he is correct. It prescribes, inter alia, that an employed teacher may be dismissed by the board employing him "for immorality, misconduct, incompetency, insubordination or willful neglect of duty." The charge contained in the notice in this case, and the proof heard thereon and made a part of plaintiff's pleading, was: That, within a few weeks after plaintiff began his services as teacher under his employment, he and one Jack Jacobs, a young man residing in the town of Grayson where the school was situated, with three young ladies, who were Miss Marjorie Booth, a pupil in the school, and Misses Frances Jones and Irene Martin, went into the school building one night between 8 and 9 o'clock and remained in there from 45 minutes to an hour without turning on any lights, and that they kept such conduct a secret for a couple or more days, when those engaged in it were in some manner discovered. It had been known from the early morning after the escapade that someone had been in the school building the night before, and which was discovered by the janitor, who found bread crumbs, cigarette stubs, and other evidences of some one having been in the building after it was closed the evening before. Plaintiff, upon being asked on cross-examination why he kept the matter a secret, answered, in substance, that he did not want to expose the young ladies. He furthermore said that Jacobs, in the afternoon before the night visit to the schoolhouse was made informed him of such contemplated party, and he requested Jacobs to "get him in on it," which was done.

Miss Booth, plaintiff's student, was asked:

"Q. If you thought it was not wrong, why did you close the doors? A. We didn't want anyone to watch us. . . .

"Q. Why were you so particular in keeping it away from the superintendent? A. Do you think we would want him to know it if we could get away with it?"

The testimony of the other witnesses was, in substance, to the same effect, but all participants testified that no immoral act was perpetrated or attempted during the stay of the party in the school building, nor did they have any such purpose in view, and the only reason given for not turning on the light (the building being equipped with electric lights) was to keep the matter a secret and that the moon gave sufficient light. The answers to the questions that we have inserted are sufficient to demonstrate a consciousness on the part of plaintiff and his witnesses that their conduct did not measure up to the correct standard, else there would have been no occasion for such cautiousness and secrecy.

Two of the definitions of the word "misconduct" given by Mr. Webster are: "To conduct amiss; bad behavior." The word has a broad scope, and is more comprehensive than "immoral conduct" or "immorality," since the acts composing them must necessarily be immoral in their nature. But conduct might not be intrinsically immoral and yet be "misconduct" as growing out of the status and social relationship of the one engaged in it. According to the text in 40 C. J. 1220, it is defined as: "Bad behavior; improper conduct; mismanagement; or wrong conduct; in usual parlance, a transgression of some established and definite rule of action, where no discretion is left, except what necessity may demand."

Plaintiff in this case was a teacher in the public schools, and was so circumstanced as that both patrons and pupils regarded him in the light of an exemplar whose conduct might be followed by his pupils, and the law by necessary intendment demands and requires that he should not engage in any conduct inevitably calculated to invite criticism and of a nature and character justly productive of suspicions of immorality. That conduct like that proven against plaintiff was of the nature indicated there can be no doubt, and the testimony to which we have hereinbefore referred is conclusive proof that the participants so regarded it. The statute (section 4472) prescribing the grounds for dismissal employs, among others, the two terms "immorality" and "misconduct," showing that it was the intention and purpose of the legislature to embrace more conduct than what is properly classified as "immorality" and to incorporate as additional grounds not embraced

strictly within its scope, such other facts as lay within the adjacent zone of "misconduct," and vested the school authorities with a sound discretion to determine the intended application of that term; and, as indicated, we do not believe the board in this case disabled that discretion.

We do not mean by what we have said to prescribe a rule of conduct measuring up to the notions of the self-constituted moralist, nor to require the teacher to abstain from every act that is prescribed by blue law advocates, but we do say that, when he engages in conduct that in the minds of a prudent and cautious person would arouse suspicions of immorality, he is then guilty of such misconduct as is contemplated by the statute. We therefore conclude that the board did not err in finding that the proven and undenied conduct was sufficient ground to authorize plaintiff's dismissal, and the court properly dismissed the action.

Wherefore the judgment is affirmed.