### KENTUCKY STATE BOARD OF EDUCATION, Appellant,

v.

### Earl ISENBERG et al., Appellees.

Court of Appeals of Kentucky.

Nov. 17, 1967.

Robert Matthews, Atty. Gen., Lloyd R. Cress, Asst. Atty. Gen., Frankfort, for appellant.

Edward F. Prichard, Jr., Frankfort, for appellees.

EDWARD P. HILL, Judge.

The appellant, Kentucky State Board of Education, suspended the appellees, Earl Isenberg, Raleigh Phelps, and Guy Reneau, from membership on the board of education of Warren County, Kentucky, positions to which they had been duly elected. KRS 156.132(2). Subsequently they were removed pursuant to KRS 156.134. The board members thus removed appealed to the Warren Circuit Court under KRS 156.134(4), wherein judgment was entered finding that: "There is no substantial evidence in the record to sustain the findings of the defendant, Kentucky State Board of Education, that plaintiffs were or are guilty of 'unlawful neglect of duty or misconduct in office' within the meaning of KRS 156.132." This appeal by the Kentucky State Board of Education followed.

Appellant may be designated herein as "State Board," the Warren County Board of Education as the "County Board," and the appellees as such.

In the summer of 1964 the Bureau of School Service, College of Education, University of Kentucky, made a comprehensive survey of the school system of Warren County, including its school plant needs and possible relocation and consolidation of facilities.

At the request of the State Board, a similar survey was made by the Kentucky Department of Education dated April 16, 1964, which recommended expansion of the previously existing South Warren High School, so as to serve all of Warren County south of Barren River; the consolidation and erection of a new high school building north of Barren River, then served by Bristow, Richardsville, and North Warren high schools; the construction of three new elementary schools; the remodeling of some existing facilities and the discontinuation of others. This survey and report recommended that sufficient funds be provided to build the new Northside High School, expand the South Warren High

School, and build the three new elementary school buildings at the same time.

The State Board recommended and directed the County Board to adopt a slight modification of said surveys.

The County Board was never able to agree with the State Board upon a plan implementing the recommendations of the survey. On January 11, 1965, it unanimously submitted counter plans, or its own plans, to the University of Kentucky plan with one major exception—that two high schools be built instead of one. The State Board adopted certain items of this plan, setting up fourteen required steps and insisting upon priority of consolidation and high school construction. Apparently the County Board did not accept these modifications. Thereafter, and on August 19, 1965, the County Board by a vote of three to two (appellees voting therefor) adopted another building program and submitted same to the State Board.

Still another proposal was submitted to the State Board on March 16, 1966, the date of the hearing on charges preferred against appellees.

It is apparent from the record that the conflict between the State Board and the County Board (particularly the three appellees) grows out of the question of priority to be given between the two building programs: (1) Construction and consolidation of high school buildings, and (2) construction of the new elementary buildings.

At a meeting of the State Board on January 20, 1966, the following statement of charges filed by the Superintendent of Public Instruction against the three appellees was adopted, and a hearing was set for March 16, 1966, thereon:

"(1) That each of the plaintiffs (appellees) knowingly failed to comply with the order of the State Board adopted August 12, 1964, that the Warren County Board follow either the University of Kentucky or the State Department of Education survey as the plan for the future building program.

"(2) That each of the plaintiffs (appellees) knowingly failed to comply with an order of June 16, 1965, that the Warren County Board officially advise the State Board whether it intends to follow the State Board's directions in either complying with the State Department of Education or the University of Kentucky survey.

"(3) That each of the plaintiffs knowingly failed to comply with the order of the State Board of September 8, 1965, that the Warren County Board cause a school facilities survey to be made by one (of six) educational institutions named therein or proceed on either of the above mentioned surveys named in charges 1 and 2, and report its decision by December 8, 1965.

"(4) That each of the plaintiffs permitted or caused the school system of Warren County to be operated in an inefficient manner by failing to implement a school building program resulting in a dangerous and substandard condition in the Warren County School District."

At a meeting of the State Board on March 17, appellees were suspended. Incidentally, appellees thereupon sought injunctive relief in Franklin Circuit Court from the action of the State Board. They were granted temporary relief without prejudice to the right of the Board to proceed with a hearing on April 12, 1966, to show cause why the appellees should not be permanently removed from office.

At the meeting of the State Board on April 12, 1966, an order was entered finding appellees guilty of "wilful neglect of duty and/or misconduct in office" and permanently removing them from office. The propriety of that order poses our question.

Unquestionably the State Board has a right under KRS 156.132 and 156.134 to suspend and remove county board members for misconduct in office or for wilful neglect of duty. Commonwealth ex rel. Baxter v. Burnett, 237 Ky. 473, 35 S.W.2d 857 (1931); Gearhart v. Kentucky State Board of Education, Ky., 355 S.W.2d 667 (1962); Hogan v. Kentucky State Board of Education, Ky., 329 S.W.2d 563 (1958); and Bell v. Board of Education of Shelby County, 308 Ky. 848, 215 S.W.2d 1007 (1948). But what is meant by "misconduct in office and/or wilful neglect of duty"? We may take one or all of the many definitions contained in the briefs for both appellant and appellees and come up with the same answer to this question. Briefly, "misconduct in office" means to conduct amiss; bad behavior. In Gover v. Stovall, 237 Ky. 172, 35 S.W.2d 24, 26 (1931), it was written:

"The word (misconduct in office) has a broad scope, and is more comprehensive than 'immoral conduct' or 'immorality,' since the acts composing them must necessarily be immoral in their nature. But conduct might not be intrinsically immoral and yet be 'misconduct' as growing out of the status and social relationship of the one engaged in it. According to the text in 40 C.J. 1220, it is defined as: 'Bad behavior; improper conduct; mismanagement; or wrong conduct, in usual parlance, a transgression of some established and definite rule of action, where no discretion is left, except what necessity may demand.'"

Misconduct and wilful neglect of duty are defined in 43 Am.Jur., Public Officers, § 195, page 39, as follows: "[E]ither to maladministration or to wilful and intentional neglect and failure to discharge the duties of the office * * * or to breach of good faith and right action."

The term is thus defined in 67 C.J.S. Officers § 60(2), page 250: "[I]nvolving moral turpitude, or which is contrary to justice, honesty, principles, or good morals * * * breach of the good faith and right action * * *."

With respect to "wilful neglect of duty," it is written in 43 Am.Jur., Public Officers, § 204, page 46, 47:

"An act is considered as done wilfully within the meaning of such provisions when it is done with a bad or evil purpose, or when the officer consciously acts contrary to a known duty. The word 'wilful' in this connection implies knowledge on the part of the officer together with a purpose to do wrong. Conduct may be voluntary, thoughtless, or even reckless without necessarily being wilful. Moreover an erroneous interpretation of a law by a public officer, especially a layman, is not grounds for ouster."

Were appellees proven guilty of "wilful neglect of duty" or such "misconduct in office" as to justify their removal under the foregoing definitions and our statutes?

There is no evidence of bad faith or misconduct on the part of appellees unless it be inferred from the failure of the appellees to adopt *in toto* the recommendations of the State Board. In this connection, it is interesting to note KRS 156.070 gives the State Board the "management and control of the common schools," while KRS 160.290 gives the local county board similar control and management within the district "[subject to] the rules and regulations of the State Board of Education."

A rule or regulation (SBE 22.3) was introduced by the State Board. It merely provides for the making of surveys for the benefit of the county boards. This regulation does not divest the local boards of some discretion in matters covered by such surveys. This regulation was not mentioned either in the charges or at the hearings or in the order of the board removing appellees.

We do not intend to imply that the State Board does not have in a proper situation

the ultimate and final word in matters pertaining to the "management and control" of the entire school system of the state, including the local districts. But the fact the statute imposes identical duties on the State Board and County Board contemplates that both boards have some discretion in the matter in issue and that each board has a right, and indeed a duty, to exercise its discretion by good-faith negotiations and discussions in the best interest of schools.

To return to Regulation SBE 22.3, we find it requires no affirmative action but prevents action contrary to the survey. There is no contention that appellees took any affirmative action contrary to the surveys unless it be said that the submission of counter proposals constituted affirmative action. That we cannot say. The evidence establishes that the County Board sought acceptance of a modified time schedule of the surveys, but there was no outright repudiation or disregard of the surveys.

The County Board must be given ample time to formulate plans of its own, to study plans submitted to it by the State Board, to consider financing of construction, and to do other things incident to revolutionary changes in school plants and facilities. Let us not unduly rush it.

It is contemplated by KRS 162.060 that plans for buildings in county districts should originate with the county boards. It provides:

"The Superintendent of Public Instruction shall be furnished a copy of all plans and specifications for new public school buildings contemplated by boards of education and for all additions to or alterations of old buildings. He shall examine or cause to be examined all such plans and specifications and shall approve or disapprove them in accordance with the rules and regulations of the State Board of Education. No board of education may award a contract for an addition to or alteration of an old building until the plan has been approved by the Superintendent of Public Instruction."

Appellees insist that appellant had other more appropriate remedies, such as declaratory judgment procedure and mandamus. This may be true, but clearly appellant had the additional remedy of removing appellees upon legal grounds. It is not for this court to condemn the selection of the remedy relied on.

We construe the statute quoted in this opinion to require the State Board, the county boards, and the Superintendent of Public Instruction to work not separately and arbitrarily, but to work in harmony and in reason to accomplish results in the best interest of the school system.

We have carefully considered the tocsin request of appellant that its action in removing appellees be approved as a healthy tonic for the entire school system. But we conclude the evidence heard by the State Board (and there was no additional proof heard in the circuit court although authorized) falls short of establishing bad faith, misconduct, or neglect of duty on the part of appellees.

The judgment is affirmed.

All concur.