**Carolyn J. HUTCHISON, Appellant,**

v.

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION; and Jefferson County Board Of Education, Appellees.**

No. 2010–CA–000032–MR.

Court of Appeals of Kentucky.

Dec. 3, 2010.

Thomas J. Schulz, Don Meade, Louisville, KY, for Appellant.

Clay J. Lamb, Frankfort, KY, for Appellee Kentucky Unemployment Insurance Commission.

Byron E. Leet, Kristie Alfred Daugherty, Louisville, KY, for Appellee Jefferson County Board of Education.

Before ACREE, Judge;  HENRY and ISAAC,[1] Senior Judges.

1. Senior Judges Michael L. Henry and Sheila R. Isaac sitting as Special Judges by assign-

## OPINION

ACREE, Judge:

Carolyn Hutchison appeals the December 3, 2009 opinion of the Jefferson Circuit Court affirming the administrative denial of unemployment benefits. Finding the circuit court properly applied the law, we affirm.

### Facts and procedure

Hutchison began employment with the Jefferson County Board of Education (School Board) in 1996 as a teacher. Her employment continued until she was discharged on November 7, 2007. The employer informed Hutchison her employment was terminated because she had engaged in conduct which rendered her unable to be a role model for her students.

Hutchison filed for unemployment benefits, and her request was denied. She appealed the initial determination to a referee.

The parties presented to the referee evidence which was largely undisputed, including that on April 15, 2007, Hutchison was arrested for third-degree terroristic threatening and two counts of fourth-degree assault (all misdemeanors), in addition to first-degree burglary (a felony). These charges arose from Hutchison's behavior following the breakup of a sixteen-year romantic relationship. The School Board relieved Hutchison of her instructional duties and reassigned her to a production and materials position.

The undisputed evidence was also that Hutchison entered a guilty plea on May 7, 2007, and the charges were reduced to four misdemeanors.[2] It appears from the record that a Domestic Violence Order (DVO) was entered as a result of Hutchison's convictions.

The parties agree that Hutchison was arrested again only a week after entry of her guilty plea and that the conduct which led to this arrest was also related to the breakup of the romantic relationship. This time Hutchison was charged with violation of a DVO, carrying a concealed deadly weapon, first-degree stalking, and failure to illuminate the headlights on her vehicle. On September 26, 2007, Hutchison pleaded guilty to second-degree stalking and violation of a DVO; the other charges were dismissed. Again, all of these facts were undisputed before the referee.

Hutchison received notice of her discharge on November 7, 2007. The parties agree the employer's stated reason for terminating Hutchison's employment was that "[her] convictions for these violent crimes seriously inhibits [sic][her] ability to serve as a positive role model for [her] students."

The referee affirmed the initial determination denying Hutchison unemployment benefits. The denial was based on the referee's conclusion that Hutchison knowingly violated a reasonable and uniformly enforced rule of the School Board, that rule being codified in KRS 161.790(1)(b) and prohibiting conduct unbecoming a teacher.

The Commission affirmed and adopted the referee's findings as its own. On appeal, the circuit court affirmed, finding the order was based upon substantial evidence and the correct rule of law.

---

ment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. Hutchison pleaded guilty to first-degree criminal trespass, two counts of fourth-degree assault, and one count of third-degree terroristic threatening.

### Standard of review

■ As the circuit court correctly noted, an administrative agency's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo.* "The judicial standard of review of an unemployment benefit decision is whether the [Commission's] findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts." *Thompson v. Kentucky Unemployment Insurance Commission,* 85 S.W.3d 621, 624 (Ky.App.2002) (citations omitted).

### Relationship between the claimant's conduct and her employment

Hutchison first contends on appeal that the circuit court's legal conclusion that the misconduct was connected to the work, for purposes of disqualification from unemployment benefits, was erroneous. More specifically, Hutchison alleges it was error for the circuit court to determine that such a connection was demonstrated, "as a matter of law, [by] guilty pleas to misdemeanors arising out of the break up of a long-term domestic relationship[.]" (Appellant's brief, p. 5).

■ Hutchison also insists on appeal that she did not engage in conduct unbecoming a teacher under the statutory standard, again, because there was no connection between her criminal behavior and her employment.

While Hutchison attempts to distinguish these two arguments, our inquiry is the same for both. The key to both is whether, as a matter of law, there was a nexus between her employment as a teacher and the conduct for which she was discharged. Accordingly, we analyze them together.

KRS Chapter 341 governs unemployment disputes. An employee is disqualified from receiving unemployment benefits if she was discharged for misconduct related to her employment. KRS 341.370(1)(b). An employee has been discharged for misconduct when she was fired for a "knowing violation of a reasonable and uniformly enforced rule of an employer[.]" KRS 341.370(6). The referee concluded Hutchison had committed misconduct connected with the work because she had violated the employer's rule against conduct unbecoming a teacher and accordingly disqualified her from receiving benefits.

■ The employer's rule against conduct unbecoming a teacher is codified in KRS 161.790(1)(b). Pursuant to that statute, a teacher's employment contract may be terminated when that teacher has demonstrated "[i]mmoral character or conduct unbecoming a teacher[.]" KRS 161.790(1)(b). However, "the conduct, when it occurs in a context other than professional competency in the classroom should have some nexus to the teacher's occupation[.]" *Board of Education of Hopkins County v. Wood,* 717 S.W.2d 837, 840 (Ky.1986).

The undisputed evidence before the referee was that Hutchison committed a series of misdemeanors in a relatively short period of time. Hutchison maintains the lack of a direct connection between those misdemeanors and her employment means the requisite nexus between the two is missing.

In the past, Kentucky courts have found conduct unbecoming a teacher had a sufficient nexus with the employment when the conduct was committed outside the workplace in certain limited contexts. These situations have involved improper contact with students or falsely reporting the reason for an absence from work. *Wood,* 717 S.W.2d at 840 (A sufficient nexus existed when two teachers smoked marijuana with two students in the teachers' apartment); *Board of Education of Laurel County v.*

*McCollum,* 721 S.W.2d 703, 704–05 (Ky. 1986) (teacher falsely called in sick to work for the school board and instead drove a coal truck for another employer). There are no such circumstances here. Hutchison did not engage in criminal behavior while performing her duties as a teacher; nor did her criminal conduct involve students or her fellow faculty members.

However, there is a heightened standard of conduct for teachers, and KRS 161.790(1)(b) reflects that.

> The purpose of teacher tenure laws is to promote good order in the school system by preventing the arbitrary removal of capable and experienced teachers by political or personal whim. It is not to protect those who violate the criminal law. A teacher is held to a standard of personal conduct which does not permit the commission of immoral or criminal acts because of the harmful impression made on the students. The school teacher has traditionally been regarded as a moral example for the students.

*Wood,* 717 S.W.2d at 839 (Ky.1986) (citing *Gover v. Stovall,* 237 Ky. 172, 35 S.W.2d 24 (1931)); *see also McCollum,* 721 S.W.2d at 705 (using nearly identical language).

Given the heightened standard of conduct, paired with Hutchison's repeated failure to conform her behavior to the requirements of the law and the violent and threatening nature of her offenses, the conduct had a sufficient nexus to her employment and therefore constituted conduct unbecoming a teacher. It is of no consequence that no student or faculty member actually knew of this conduct. When a teacher engages in behavior which seriously compromises her ability to be an "example to the school community," there is a sufficient nexus between the employment and the conduct to warrant disqualification for employment benefits. *Wood,* 717 S.W.2d at 840. The circuit court prop-

erly affirmed the Commission's application of the law to the facts before the referee.

Neither this opinion nor those we cite stand for the proposition that any and all criminal convictions are necessarily connected to the employment of a teacher. In the instant case, it is the quantity of the convictions (six), their nature (violent, threatening, in defiance of a DVO), and their timing (occurring in a very brief span), that justify the employer's decision to terminate Hutchison.

### Burden of proof

■ Hutchison's last argument is that the circuit court's affirmation of the referee and Commission decisions amounts to a finding that pleading guilty to violent misdemeanor crimes is presumptively conduct unbecoming a teacher. Hutchison believes this impermissibly shifts the burden of proof to the claimant.

■ Hutchison is correct that it is the employer's burden to demonstrate the employee committed misconduct connected with the employment. *Brown Hotel Co. v. Edwards,* 365 S.W.2d 299, 301 (Ky.1963). In this case, that burden was imposed upon the employer and was not shifted to Hutchison. Both parties were permitted to present evidence and make legal arguments to the referee, who simply found the employer's position more compelling in light of the evidence. The circuit court, applying the appropriate standards of review, affirmed because the employer had demonstrated Hutchison committed misconduct connected to the employment.

The circuit court's ruling that the evidence of Hutchison's conduct demonstrated a sufficient connection with the employment does not amount to burden shifting; rather, it is a correct conclusion of law based on the relevant facts.

*Conclusion*

The circuit court properly affirmed the Commission's determination that Hutchison was disqualified from receiving unemployment benefits because she was discharged for misconduct connected to the employment. We affirm.

ALL CONCUR.