BOARD OF EDUCATION OF FAYETTE COUNTY, Kentucky; and Dr. Tom Shelton, in his official capacity as Superintendent of the Fayette County Public Schools, Appellants

v.

Rosalind HURLEY–RICHARDS, Appellee.

No. 2011–SC–000599–DG.

Supreme Court of Kentucky.

April 25, 2013.

12. *Herring,* 555 U.S. at 144, 129 S.Ct. 695

Robert Lynn Chenoweth, Grant Robert Chenoweth, Chenoweth Law Office, Lawrenceburg, KY, Counsel for Appellant.

Arthur L. Brooks, Joellen Sensenbach McComb, Brooks, McComb & Fields Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

The question presented in this case is: What is the meaning of the phrase, "conduct unbecoming a teacher" as used in KRS 161.790(1)(b)? The question is significant because under the statute, "conduct unbecoming a teacher" is one of the few reasons for which a public school teacher's employment contract may be terminated. It is the basis upon which Appellant, Board of Education of Fayette County, Kentucky (the Board) justified its suspension of Appellee, Rosalind Hurley–Richards (Richards), a Kentucky school teacher of some twenty-two years.

The Board, and Appellant Dr. Tom Shelton as Superintendent of the Fayette County Public Schools, appeal from an opinion of the Court of Appeals which affirmed an order of the Fayette Circuit Court. The circuit court reversed and remanded a final order of a Fayette County Public Schools administrative hearing Tribunal which had found Richards guilty of "conduct unbecoming a teacher." As a result of that finding, Richards was suspended without pay from her employment for an extended period of time.

Appellants contend that the circuit court failed to give deference to the facts found by the hearing Tribunal, and that it substituted its own judgment of the facts, thereby exceeding the scope of its authority. The Court of Appeals, Appellants claim, compounded the error by affirming the circuit court's reinterpretation of the facts, and by misconstruing the meaning of the statutory term, "conduct unbecoming a teacher." Specifically, Appellants contend that: 1) whether conduct constitutes "conduct unbecoming a teacher" is exclusively a question for the hearing Tribunal; 2) the circuit court misinterpreted the Tribunal's findings of fact and applied its own judgment to conclude that Richards' conduct was justified pursuant to KRS 503.110(1)(a);[1] 3) the Court of Appeals failed to properly apply the rules of statutory interpretation in ascertaining the meaning of "conduct unbecoming a teacher;" and finally, 4) having construed the statutory meaning of "conduct unbecoming a teacher," the Court of Appeals should have remanded the matter to the Tribunal for findings of fact and conclusions of law

---

1. We decline to address the circuit court's reference to KRS 503.110(1)(a). It was not a material part of the circuit court's judgment and the Court of Appeals did not refer to it. The justification of "physical force" provided by KRS 503.110(1)(a) relates to criminal conduct charged under the Kentucky Penal Code and has no application to the adjudication of teacher's discipline for "conduct unbecoming a teacher" under KRS 161.790(1)(b).

based upon the Court of Appeals' definition.

For the reasons set forth herein, we affirm the Court of Appeals' decision, but we do so for different reasons.

## I. JUDICIAL REVIEW OF FINAL ORDERS OF A PUBLIC SCHOOL ADMINISTRATIVE HEARING TRIBUNAL

KRS 161.790 establishes the process for the adjudication of public school teacher disciplinary matters. KRS 161.790(4)–(9) provides for the selection of an *ad hoc* hearing Tribunal[2] to conduct an administrative evidentiary hearing. The Tribunal makes findings of fact, determines whether grounds for termination have been proven, and renders a final order accordingly.[3] The decision of the Tribunal is a final order, subject to judicial review by the circuit court "in accordance with KRS Chapter 13B." KRS 13B. 150(2) requires the courts to give deference to agency fact finding: "The court shall not substitute its judgment for that of the agency *as to the weight of the evidence on questions of fact,*" except in the limited circumstances identified in subsections (a)–(d) of KRS 13B.150(2).[4] (emphasis added).

■ We agree with Appellants' concern that the facts as described by the circuit court, and as then echoed by the Court of Appeals, departed in some important respects from the findings of the Tribunal. We need not for the sake of this opinion elaborate on the circuit court's re-interpretation of the facts, except to note that it generally casts the situation in a light more favorable to Appellee. We emphasize that upon judicial review, deference extends to agency *fact-finding.* However, matters of law, including the interpretation and construction of statutes are, as further explained below, within the province of the judicial branch of government.

Based upon our interpretation of the applicable law, we conclude that Richards'

2. Pursuant to KRS 161.790(4), the tribunal consists of three members appointed by the commissioner of education. Of the three members, one must be a teacher or retired teacher, one must be an administrator, and one must be a layperson. The members may not be from the district where the hearing is being conducted. The members are selected as the need for a hearing arises, from a pool of potential tribunal members who have been designated and trained to serve as tribunal members on a regular and ongoing basis.

3. KRS 161.790(10) provides suspension and other sanctions as an alternative to termination.

4. KRS 13B.150—"Conduct of Judicial Review" provides:

(1) Review of a final order shall be conducted by the court without a jury and shall be confined to the record, unless there is fraud or misconduct involving a party engaged in administration of this chapter. The court, upon request, may hear oral argument and receive written briefs.

(2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the agency;
(c) Without support of substantial evidence on the whole record;
(d) Arbitrary, capricious, or characterized by abuse of discretion;
(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
(g) Deficient as otherwise provided by law.

conduct during the event under review, *as found by the Tribunal and described in its final order,* did not constitute "conduct unbecoming a teacher" within the meaning of KRS 161.790(1)(b). Accordingly, we affirm the Court of Appeals.

We begin with a recitation of the Tribunal's facts.

## II. FACT FINDINGS OF THE ADMINISTRATIVE HEARING TRIBUNAL

The following facts are taken exclusively from the September 8, 2009 final order of the administrative hearing Tribunal. Rosalind Hurley–Richards, a veteran teacher of twenty-two years, was in her sixth year of teaching at Cardinal Valley Elementary School in Fayette County. On the morning of February 3, 2009 she arrived at the school and gathered some classroom supplies from the basement. She returned to the hallway as children, arriving for the school day, headed to the cafeteria for breakfast. Realizing that no hall monitor was on duty, Richards assumed that responsibility.

Among the arriving children were three siblings: Leslie, a fifth-grader; Wesley, a second-grader; and Dolly, a kindergarten student.[5] Wesley and Dolly were running together down the hallway to the cafeteria when Richards admonished them to "walk, walk, walk." They did not comply, but when Leslie, the oldest of the three, told her younger siblings to slow down, they did so. Richards directed Wesley and Dolly to retrace their steps at a proper pace. Wesley, the second-grade boy, refused and ran down the hall again. He defiantly told

Richards that she could not tell him what to do. Richards then instructed Leslie and Dolly to go on to the cafeteria for breakfast while she talked to Wesley. Leslie compliantly took Dolly by the hand to lead her toward the cafeteria, but Wesley grabbed Dolly's hair and began pulling her in the opposite direction. What ensued was described by the Tribunal as a "tug-of-war" between Leslie and Wesley over Dolly. Richards put her arm around Wesley's waist to disengage him from pulling his little sister's hair. Leslie announced that she was going to the office to call their mother, and she proceeded to do so with little Dolly following behind her.[6]

Richards told Wesley that they, too, must go to the office, but Wesley refused to move. The Tribunal's findings reflect that "Richards put her arm around [Wesley's] back to urge him forward. He squirmed and twisted. Richards propelled him forward. She was still holding [the supplies] in her left arm and hand."

Richards then opened the office door, and "she and Wesley moved up the office hallway" following Leslie and Dolly. Unable to "drop [Wesley] off in the SAFE room" because "there was no supervisory adult in the room nor was anyone in the SAM office" Richards proceeded to the principal's office, with Wesley "moving under protest" and complaining that Richards was "choking" him, and Richards saying that she was not hurting him.

The Tribunal summarized the event with this finding:

> Rosalind Richards physically restrained a student whom she had scolded for running down the hall. As the student

---

5.  "Leslie," "Wesley," and "Dolly" are pseudonyms employed in this opinion to protect the children's true identities.

6.  It is never explained in the Tribunal's findings if Leslie wanted to call their mother to

tell on Wesley, to complain about Richards, or perhaps to feel her mother's comfort at that frustrating moment. There was no finding of the Tribunal that the children's mother was offended by Wesley's treatment.

was being guided to the office, he resisted and turned to go back toward the cafeteria. At this point, Richards' arm was across [Wesley's] front, sliding up and around the neck/ shoulder area as she physically directed him toward the office. This may have been perceived as choking. She continued to speak loudly to the student.

The Tribunal also found:

[Richards] had obviously unintentionally slid her hand around the neck/shoulder area to keep the child moving forward next to her. Her hold on [Wesley] was not sufficiently tight to prevent his crying and complaining and the adults who were at the situation did not react as if the child was in harm's way.

Richards was immediately suspended. Following his review of the incident, School Superintendent Stu Silberman[7] terminated Richards' employment on February 27, 2009. Richards invoked her right of administrative review by a hearing Tribunal which met in April and September 2009. The Tribunal concluded that although "Richards had no intent to harm the child and did not physically harm the child," her "poor judgment" in coercing the child to the office after he complained about choking was "conduct unbecoming a teacher." In lieu of termination of her employment contract, Richards was suspended without pay through June 30, 2010, which amounted to a suspension from employment without pay for about 17 months.

### III. PROCEDURAL HISTORY

Richards appealed the Final Order of the Tribunal to the Fayette Circuit Court as provided by KRS 161.790(9). The Fayette Circuit Court concluded that the Tribunal's findings did not provide a factual

basis to support the conclusion that Richards was guilty of "conduct unbecoming a teacher." Accordingly, the circuit court reversed. The Board appealed to the Court of Appeals. The Court of Appeals examined the matter and held that "conduct unbecoming a teacher" necessarily included the appearance of immorality or "conduct equally egregious." Based on its interpretation of the statutory language, the Court of Appeals agreed with the circuit court that the events reflected in the Tribunal's findings did not amount to "conduct unbecoming a teacher." The Court of Appeals therefore affirmed the circuit court.

The question of what conduct the legislature intended to be sufficient cause for terminating the employment contract of a public school teacher is one of significant statewide concern, and so we granted Appellants' request for discretionary review. While we do not adopt the Court of Appeals' interpretation of the phrase "conduct unbecoming a teacher," we reject Appellant's argument that it is the function of the *ad hoc* Tribunals empanelled in each instance under KRS 161.790 to decide the "intended zone of conduct by a teacher" proscribed by the statutory term "conduct unbecoming a teacher."

### IV. AUTHORITY OF THE HEARING TRIBUNAL

As noted at the outset of this opinion, we agree with Appellants that it is the function of the Tribunal to ascertain the facts. It is the role of the Tribunal, as the finders-of-fact, to determine "what happened" and as the adjudicative body with original jurisdiction, to apply the law and if appropriate grounds are found, decide upon the appropriate sanction. Our disagreement with the Tribunal's decision, however, does

---

**7.** Silberman was then serving as Superintendent of Fayette. County Public Schools. He was later replaced by Appellant, Dr. Tom Shelton.

not turn upon a dispute with the facts as the Tribunal found them. We do not doubt that what the Tribunal said happened is exactly what did happen. Our disagreement with the Tribunal's decision rests purely upon a matter of law: the application of the Tribunal's facts to the legal standard of "conduct unbecoming a teacher."

Appellants cite *Fankhauser v. Cobb*, 163 S.W.3d 389 (Ky.2005) as support for their claim that each hearing Tribunal is invested with the discretion to decide what "conduct unbecoming a teacher" means. We disagree. *Fankhauser* holds that under the current version of KRS 161.790 the Tribunal *rather than the board of education* has the statutory authority to determine the facts and decide the appropriate sanction. The board may initially charge a teacher and sanction as it deems appropriate, but if the teacher invokes his right of administrative review, it is for the Tribunal to determine as an issue of fact whether a violation occurred, and if so, what sanction to impose. The final order of the Tribunal is then subject to judicial review in the circuit court under procedures established by KRS 13B.150. As we noted previously, the statute requires deference to the Tribunal only "*as to the weight of the evidence on questions of fact.*" KRS 13B.150(2) (emphasis added). *Fankhauser* does not delegate to the Tribunal the duty to say what the statute means.[8]

▮ Thus, we reject out of hand Appellants' assertion that "it is now [since the last amendment of the statute] for a tribu-

nal panel to determine the intended zone of conduct by a teacher that is proscribed by the legal cause set out in KRS 161.790(1)(b) of 'conduct unbecoming a teacher.'" Brief on Behalf of Appellants, page 11. It is not within the Tribunal's authority to define the kind of conduct that constitutes "conduct unbecoming a teacher" within the context of KRS 161.790(1)(b). The meaning of a statute such as KRS 161.790 is a question of law, not a question of fact. "Because the construction and application of statutes is a question of law, it is subject to de novo review on appeal." *Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky.2006). "[T]he interpretation of [a statute] is a proper judicial function. Clearly, the courts should not legislate, but the courts must interpret. It is necessary for the courts to provide reasonable interpretation of the language used by the legislature, where a legitimate controversy arises as to the meaning of the language used, until the legislature can expand its own definition, it if [sic] so desires." *McCord v. Pineway Farms*, 569 S.W.2d 690, 692 (Ky.App.1978). As more famously expressed by Chief Justice John Marshall in the historic case of *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), "[i]t is emphatically the province and duty of the judicial department to say what the law is."

▮ Issues of statutory construction are matters of law for the courts to resolve, and the reviewing court is not bound by an administrative body's interpretation of a statute.[9] *Commonwealth v. Jewish*

---

8. We are not persuaded by Appellants' argument that *Gover v. Stovall*, 237 Ky. 172, 35 S.W.2d 24 (1931) signifies a continuing legislative intent to delegate to "the school authorities" power to define the meaning of the word "misconduct" in the former statute. Given the subsequent and substantive changes in the legislature's approach to teacher disci-

pline, not the least of which is the creation of the *ad hoc* Tribunal as a decision maker in the place of the school board, we see no lingering vestige of the legislative intent underlying the statute reviewed in *Gover* in 1931.

9. This Court has recognized the "deference afforded an administrative agency's construction of a statute that it is charged with imple-

*Hospital Healthcare Services, Inc.*, 932 S.W.2d 388, 390 (Ky.App.1996); *see also Delta Air Lines, Inc. v. Commonwealth,* 689 S.W.2d 14, 20 (Ky.1985) ("Although generally the courts give great deference to an agency interpretation of the regulations and the law underlying them, that does not rise to an abdication of the court's responsibility to finally construe the same statute or regulation. In matters of statutory construction, the courts have the ultimate responsibility. . . ."). "It is the inherent power of the courts to scrutinize the acts of such administrative tribunals wherein the person or property rights of an individual have been adjudicated, and no special provision of a statute is necessary to confer authority already possessed by them under the constitution." *Kendall v. Beiling,* 295 Ky. 782, 175 S.W.2d 489, 491 (1943). The legislature explicitly recognized this inherent authority of the courts in KRS 13B.150(2)(a), which refers to the court's authority to reverse agency orders that are "[i]n violation of constitutional or statutory provisions."

It is for the courts to decide the "zone of conduct" that the legislature intended to proscribe by its phrase, "conduct unbecoming a teacher," not the administrative Tribunal. Allowing each empanelled Tribunal that judges a teacher's conduct to adopt its own view of the meaning of KRS 161.790(1)(b), "conduct unbecoming a teacher," would effectively eliminate the right of judicial review, leaving each *ad hoc* Tribunal as a law unto itself. Under

the constitutional power of judicial review, and its statutory responsibility under KRS Chapter 13B, the circuit court must exercise its authority to review the Tribunal's order and to reject it if, among other things, its decision is "[i]n violation of constitutional or statutory provisions," KRS 13B.150(2)(a), including an improper application of the statutory term "conduct unbecoming a teacher."

## V. KRS 161.790(1)(B): "CONDUCT UNBECOMING A TEACHER"

Appellants contend that "conduct unbecoming a teacher" means whatever the hearing Tribunal says it means at the time it enters its final order, including, as in the present case, "using poor judgment in continuing to coerce [a second grader] toward the office once he complained about choking." The Tribunal also found that Richards was not holding Wesley tight enough to prevent his crying out, and that he was not actually "in harm's way." As further conceded by Appellants, Wesley suffered no physical harm and Richards intended him no harm. Therefore, at least in this case, the Tribunal's definition of "conduct unbecoming a teacher" is reduced to a teacher's using "poor judgment," with no intent to do harm, by coercing a student toward the school office after he *falsely* complained about choking and was not actually harmed.

█ To discern the meaning of a statute, the court must construe "[a]ll words

menting," so long as the "agency interpretation is in the form of an adopted regulation or formal adjudication." *See Louisville/Jefferson County Metro Government v. TDC Group, LLC,* 283 S.W.3d 657, 661 (Ky.2009) (citing *Board of Trustees of Judicial Form Retirement System v. Attorney General of the Commonwealth,* 132 S.W.3d 770, 786–87 (Ky.2003)) (known as "Chevron deference" from *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694

(1984)). The doctrine is inapplicable here because the agency involved, the hearing Tribunal, is not acting in accordance with an adopted regulation or a formal adjudication. Moreover, unlike the permanent board of a conventional administrative agency, the *ad hoc* nature of the Tribunal panels prevents them from developing the special expertise in administering the statute upon which *Chevron* deference is grounded.

and phrases ... according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning." KRS 446.080(4). We must "accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Cosby v. Commonwealth,* 147 S.W.3d 56, 58–59 (Ky. 2004) (quoting *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984)).

"Conduct unbecoming a teacher" is not a technical phrase and it has not acquired a peculiar meaning. So, our first step is to review the plain meaning of the phrase and the words within it. Webster's Third New International Dictionary provides us with the plain meaning of words, and it defines "unbecoming" as "not becoming: UNSUITABLE, INDECOROUS, IMPROPER." Webster's Third New International Dictionary of the English Language Unabridged 2483 (1993). Another common resource for finding the plain meaning of a word, Merriam–Webster, defines "unbecoming" as "not becoming ...; *especially:* not according with the standards appropriate to one's position or condition of life <*unbecoming* conduct>[.]" [10]

■ With that literal meaning, it is obvious that, in addition to "immoral charac-

ter" also cited in KRS 161.790(1)(b) as grounds for termination of a teacher, "conduct unbecoming a teacher" is conduct that is unsuitable, indecorous, or improper of a teacher. Although conceptually broad compared to some of the other grounds for termination listed in the statute,[11] conduct that fits within this definition will be conduct that violates the accepted norms of decent behavior and offends the sensibilities of reasonable persons, taking into account the role of a secular, public school teacher in our culture. Teachers are reasonably expected to serve as role models and exemplars for their students, and they typically do. For this reason, whether the conduct in question occurred during school hours, on school property, or directly affects the teacher's ability to perform his duties cannot be the sole determinative factors, but are certainly relevant circumstances to be considered. Instead, the determinative factor is whether the conduct offends the sensibilities of reasonable persons under the circumstances. Implicit in this holding is that conduct shall not be regarded as offending reasonable sensibilities as a pretext for unfair discrimination against teachers with unpopular opinions, attitudes, or beliefs not manifested by unbecoming conduct.

This standard is consistent with the litany of cases Appellants cite as illustrations

---

10. *Unbecoming Definition,* Merriam–Webster.com, http://www.merriamwebster.com/dictionary/unbecoming (last visited April 16, 2013).

11. KRS 161.790(1) provides: The contract of a teacher shall remain in force during good behavior and efficient and competent service by the teacher and shall not be terminated except for any of the following causes:

(a) Insubordination, including but not limited to violation of the school laws of the state or administrative regulations adopted by the Kentucky Board of Education, the Education Professional Standards Board, or lawful rules

and regulations established by the local board of education for the operation of schools, or refusal to recognize or obey the authority of the superintendent, principal, or any other supervisory personnel of the board in the performance of their duties;

(b) Immoral character or **conduct unbecoming a teacher;**

(c) Physical or mental disability; or

(d) Inefficiency, incompetency, or neglect of duty, when a written statement identifying the problems or difficulties has been furnished the teacher or teachers involved, (emphasis added).

of "conduct unbecoming a teacher." *See Fankhauser*, 163 S.W.3d at 392 (bringing a gun onto school property in direct violation of express school policy was punishable as "insubordination" and "conduct unbecoming a teacher"); *Board of Education v. McCollum*, 721 S.W.2d 703 (Ky.1986) (falsifying time sheets by claiming sick leave for time spent working for another employer was "conduct unbecoming a teacher"); *Gallatin Co. Bd. Of Education v. Mann*, 971 S.W.2d 295 (Ky.App.1998) (falsifying personal time sheets by adding additional hours to work day for approximately three weeks constituted "conduct unbecoming a teacher"); and *Board of Education v. Wood*, 717 S.W.2d 837 (Ky.1986) (smoking marijuana with students was "conduct unbecoming a teacher"). We now compare the foregoing examples to Richards' conduct with young Wesley.

## VI. THE BEHAVIOR IN QUESTION DOES NOT CONSTITUTE CONDUCT UNBECOMING A TEACHER

■ We agree with Appellants that the Court of Appeals interpreted too narrowly the meaning "conduct unbecoming a teacher" by incorporating an element of immorality in the sense of dishonesty, corruption, or illicit sexual activity, and we also agree that the statute does not require an intent to harm students. But upon the application of the standard we outline above, we conclude as a matter of law that Richards conduct is not "conduct unbecoming a teacher."

If the school board has a policy prohibiting teachers from touching students, or as argued by Appellants' counsel, "resorting to physical force to resolve a verbal conflict," then perhaps Richards should have been accused of insubordination. But what occurred here, according to the Tribunal's own findings, was a physical conflict between students created when a rambunctious little second grader pulled his sister's hair and refused to release it. What followed, according to the Tribunal's findings, is worth repeating as we look to see exactly what the teacher confronted.

Richards had properly stopped three children who were running down the hall. Clearly, she would have been derelict in her duty to have ignored that dangerous activity. When she verbally sent them on their way to the cafeteria, the "tug-of-war" erupted between Wesley and Leslie because Wesley started pulling Dolly's hair. Richards then used her one free hand to get Dolly released from Wesley's grasp. Appellants assert no impropriety in that. At that point, Richards told the two little girls to go on to the cafeteria while she talked to Wesley. But instead of going to the cafeteria, Leslie announced that she was going to the office to call her mother, and did so with Dolly in tow. Wesley was verbally refusing to go anywhere. Richards now has two little girls heading off on their own, not to the cafeteria as they were told, but to the office. Should Richards have let them go off while she stayed with Wesley, or should she have gone with the girls and let Wesley run wild? Apparently there were no other school personnel present and able to lend a hand. So, according to the Tribunal, Richards "put her arm around [Wesley's] back to urge him forward. He squirmed and twisted. Richards propelled him forward." Sheri Hall, the Kindergarten Assistant who witnessed this part of the incident, saw no need to intervene either to protect the child or to assist Richards. Not until Richards and the children entered the office hallway, where again no school personnel was available in the SAFE room or SAM office to help, did Wesley protest that she was choking him. Notably, there was no evidence at all that Wesley was actually choking. At most, the Tribunal found that his movement "may have been perceived as choking."

The "physical force" deemed by Appellants as offensive was minimal. The indication is that Wesley's feet never left the ground and he was never in harm's way. Richards had three disobedient children going in different directions and no assistance. Her conduct, even when construed in the worst possible light supported by the Tribunal's findings, was entirely reasonable. If by "exercising poor judgment," Appellants mean that a preferable course of action may have been available, they fail to illustrate what that might have been. If every instance of such "poor judgment" becomes grounds for terminating a teacher's contract, then the certainty and security ordinarily expected of a teacher's employment contract will be greatly jeopardized.

■ The conduct described by the Tribunal does not reach such an inappropriate level as to offend the sensibilities of a reasonable person. Every teacher and administrator in the public school system has the obligation, in accordance with the rules, regulations, and bylaws of the Board, to "hold pupils to a strict account for their conduct on school premises[.]" KRS 161.180(1). Compliance with the statute may require teachers and other school personnel to use, within reasonable discretion, appropriate physical contact when an unruly or disobedient student, for his own safety or the safety of others, needs to be somewhere other than where he chooses to be. Such is the case that is before us today.[12]

■ The public schools employees are expected by law to provide a safe environment for children and to prepare children to be productive, successful adults. That will ordinarily include reasonable disciplinary measures that may result in touching the child and exerting at least some minimal restraining force. There often will not be time to call in the school guidance counselor for a calmer or more cerebral de-escalation of the situation. Or as it seems here, the situation may simply be not serious enough to warrant that kind of therapeutic intervention. The goals of safety and education cannot be accomplished if teachers, fearing termination of their employment contracts, are left in the predicament faced by Appellee Richards: letting Wesley run loose while she corralled his sisters, letting the sisters head off unattended to call their mother, or keeping them all under her watchful eyes and firm but harmless hand until help was available. Some may characterize Richards' handling of the situation as a lapse in good judgment and others may view it as a reasonable choice in a difficult situation. Nevertheless, it was not "conduct unbecoming a teacher" as to justify the termination or suspension of a teacher's contract under KRS 161.790(1)(b).

## VII. REMAND TO THE TRIBUNAL FOR FURTHER ADJUDICATION IS NOT APPROPRIATE

Appellants contend that the Court of Appeals, by failing to remand the case to the Tribunal for further fact-findings consistent with its interpretation of KRS

12. We are aware of the recent promulgation of 704 KAR 7:160 (Use of physical restraint and seclusion in public schools), which is not to become effective until the 2013–2014 school year. This regulation might have some application in a case such as the one at hand, and it may provide beneficial guidance in this difficult area. But, it cannot be construed to change the meaning of the statutory language of KRS 161.790(1)(b), "conduct unbecoming a teacher" as chosen by the legislature. An administrative agency may not by regulation "seek to amend, alter, enlarge, or limit terms of legislative enactment." *Ruby Const. Co., Inc. v. Department of Revenue, Com. ex rel. Carpenter,* 578 S.W.2d 248, 252 (Ky.App.1978) (citing to *Linkous v. Darch,* 323 S.W.2d 850 (Ky.1959)).

161.790(1)(b), usurped the role of the Tribunal. Thus, they argue that if this Court believes the Tribunal misconstrued the meaning of the statute, we must likewise remand for the Tribunal to reconsider whether Richards' conduct violated the statute. We respectfully disagree.

As noted previously, the Tribunal's function is to ascertain the facts of the event that transpired, and if the legal criteria for sanctions against the teacher exist, determine the sanction. The Tribunal completed that task. The facts were determined. We need not remand for more factual elucidation at this late stage.

KRS 13B.150(2) provides: "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is: "(a) In violation of constitutional or statutory provisions; ... [and] (d) Arbitrary, capricious, or characterized by abuse of discretion[.]" Based upon the foregoing analysis, we conclude that the final order of the administrative hearing Tribunal was in violation of a statutory provision, and as such, was characterized by abuse of discretion; therefore, we reverse it.

Because we accept in full the facts found by the Tribunal, an additional adjudicative hearing is not appropriate or necessary. The charge of "conduct unbecoming a teacher" lodged in this instance against Appellee was not sustained by the evidence and was not supported by the Tribunal's findings. There is nothing for the Tribunal to adjudicate.

## VIII. CONCLUSION

We affirm the decision of the Court of Appeals, albeit for the reasons stated herein. Accordingly, pursuant to the opinion of the Fayette Circuit Court, this matter is remanded to the Tribunal with directions to enter an order dismissing the charge of "conduct unbecoming a teacher," and enforcing the provisions of KRS 161.790(8) that "the suspended teacher shall be paid his full salary for any period of suspension."

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCOTT, JJ., concur.

KELLER, J., not sitting.